NO. 26-_____

RECEIVED

**Feb 19, 2026**

U.S. COURT OF APPEALS FIFTH CIRCUIT

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

*IN RE* **ALLIANCE LIFTBOATS, LLC**

_____

**PETITION FOR WRIT OF MANDAMUS FROM THE UNITED STATES
DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA,
HON. SUSIE MORGAN, CIVIL ACTION 2:24-CV-01000**

_____

**PETITION FOR WRIT OF MANDAMUS**

_____

David M. Korn (Bar #21676)
Rebecca Sha (Bar #35317)
Stephanie M. Poucher (Bar #37263)
Brendan J. Besh (Bar #40280)
**PHELPS DUNBAR LLP**
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504 566 1311
Facsimile: 504 568 9130
Email:      kornd@phelps.com
           rebecca.sha@phelps.com
           stephanie.poucher@phelps.com
           brendan.besh@phelps.com

**ATTORNEYS FOR DEFENDANT-
PETITIONER, ALLIANCE LIFTBOATS,
LLC**

# <u>CERTIFICATE OF INTERESTED PARTIES</u>

The undersigned counsel of record certifies that, pursuant to 5TH CIR. R. 28.2.1, the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.      Patrick Breaux, plaintiff-respondent

2.      Counsel for plaintiff-appellee:

Harry E. Morse
Martin S. Bohman
**BOHMAN MORSE, LLC**
400 Poydras St., Suite 2050
New Orleans, LA 70130

Cayce C. Peterson
Jeffrey P. Green
**JJC LAW LLC**
111 Veterans Memorial Blvd.
Heritage Plaza, Suite 810
Metairie, LA 70005

Michael A. Mahone, Jr.
**THE MAHONE FIRM LLC**
5190 Canal Blvd, Suite 102
New Orleans, LA 70124

Thomas M. Flanagan
Anders F. Holmgren
**FLANAGAN PARTNERS LLP**
201 St. Charles Ave., Ste. 3300
New Orleans, LA 70170

3.      Alliance Liftboats, LLC, defendant-petitioner

4.      Helix Energy Solutions Group, Inc.

i

5.    Counsel for defendant-appellant:

   David M. Korn
   Rebecca Sha
   Stephanie M. Poucher
   Brendan J. Besh
   **PHELPS DUNBAR LLP**
   365 Canal St., Suite 2000
   New Orleans, LA 70130

SO CERTIFIED, this the 19th day of February, 2026.

_____
                              Rebecca Sha

PD.60712888.9

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ..................................................................v

**STATEMENT OF RELIEF SOUGHT** ................................................1

**ISSUE PRESENTED** ...........................................................................1

**INTRODUCTION** .................................................................................3

**RELEVANT BACKGROUND** ..............................................................4

    **A.**    **The Fair Labor Standard Act** ........................................4

    **B.**    **This Court's reasoning in *Adams* is instructive in determining which employees are similarly situated**......................5

    **C.**    **Plaintiff files the instant FLSA collective action against Alliance** .......................................................6

    **D.**    **The District Court certified a class without regard to the employees' job duties.**.......................................7

    **E.**    **Appeal as of right sought from this Court and permissive appeal and accompanying stay sought from the district court** ...................................................10

    **F.**    **Alliance seeks relief from this Court.** ............................10

**REASONS FOR GRANTING THE WRIT**........................................11

**I.**    **The District Court Erred by Failing to Evaluate What Alliance's Employees Actually Did in Certifying the Collective Action.** ......................................................11

    **A.**    **The District Court Erred in Certifying this Collective Action.**......................................................12

        **1.**    **The District Court should have relied upon the *Adams* Court's determination that what employees actually do is central to the similarly situated inquiry.** ......................................14

PD.60712888.9

2.      Proceeding Collectively Was Improper Given the Circumstances of Breaux's Employment.......................19

B.      The District Court's precedent has foreclosed decertification upon a subsequent showing that the class members are not similarly situated or are otherwise not appropriately considered on a class basis.........................................................................24

II.      This Court should grant mandamus.........................................................25

A.      This issue will evade review without mandamus............................26

B.      This Court should grant mandamus because the district court erred in failing to evaluate what alliance's employees actually did in certifying the collective action.........................................................................27

C.      This Court should grant mandamus to harmonize its rulings in *Swales* and *Adams* and ruling that the determination of what employees actually do must be made in the similarly situated analysis............................27

CONCLUSION...............................................................................................29

CERTIFICATE OF SERVICE .......................................................................31

CERTIFICATE OF COMPLIANCE ..............................................................32

iv

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*In re A&D Interests, Inc.*,
  33 F.4th 254 (5th Cir. 2022) ...............................................................28

*Adams v. All Coast, L.L.C.*,
  15 F.4th 365 (5th Cir. 2021) .....................................................*passim*

*In re Am. Lebanese Syrian Associated Charities, Inc.*,
  815 F.3d 204 (5th Cir. 2016) ...............................................................27

*Baldridge v. SBC Commc'ns, Inc.*,
  404 F.3d 930 (5th Cir. 2005) ...............................................................26

*Basco v. Wal-Mart Stores, Inc.*,
  No. 00-3184, 2004 WL 1497709 (E.D. La. July 2, 2004)..................20

*Behnken v. Luminant Mining Co., LLC*,
  997 F. Supp. 2d 511 (N.D. Tex. 2014) ...............................................24

*Cheney v. U.S. Dist. Ct. for D.C.*,
  542 U.S. 367 (2004)......................................................................25, 27

*Clark v. A&L Homecare and Training Ctr.*,
  LLC, 68 F.4th 1003 (6th Cir. 2023)..............................................12, 14

*Clarke v. Pei Wei Asian Dinner LLC*,
  No. 20-800, 2023 WL 2518805 (N.D. Tex. Mar. 13, 2023) .............22

*Coffin v. Blessey Marine Services, Inc.*,
  771 F.3d 276 (5th Cir. 2014) ...................................................2, 5, 16

*Crain v. Helmerich & Payne Int'l Drilling Co.*,
  No. 92-0043, 1992 WL 91946 (E.D. La. Apr. 16, 1992) ..................19

*Da Beers Consol. Mines v. United States*,
  325 U.S. 212 (1945)..............................................................................27

v

*Dreyer v. Baker Hughes Oilfield Ops., Inc.*,
  No. 08-1212, 2008 WL 5204149 (S.D. Tex. Dec. 11, 2008) ..............................17

*Gomez v. Glob. Precision Sys.*,
  636 F. Supp. 3d 746 (W.D. Tex. 2022) ..........................................................4, 12

*Hamm v. Acadia Healthcare Co., Inc.*,
  748 F. Supp. 3d 404 (E.D. La. 2024) (Morgan, J.).................................11, 24, 25

*Hamm v. Acadia Healthcare Co., Inc.*,
  No. 20-01515, 2022 WL 2713532 (E.D. La. July 13, 2022)...........................19

*Hampton v. McDermott Int'l, Inc.*,
  No. 19-200, 2024 WL 1664753 (W.D. La. Apr. 17, 2024)..............................23

*Harkins v. Riverboat Servs.*,
  385 F.3d 1099 (7th Cir. 2004) .......................................................................6, 15

*In re Itron, Inc.*,
  883 F.3d 553 (5th Cir. 2018) ..............................................................................25

*Johnson v. Big Lots Stores, Inc.*,
  561 F. Supp. 2d 567 (E.D. La. 2008)..................................................................23

*In re Depuy Orthopaedics, Inc.*,
  870 F.3d 345 (5th Cir. 2017) ..............................................................................26

*In re JP Morgan Chase & Co.*,
  916 F.3d 494 (5th Cir. 2019) ..............................................................................28

*In re Schlumberger Tech. Corp.*,
  818 Fed. Appx. 304 (5th Cir. 2020).....................................................................28

*Kaloum v. Stolt Offshore, Inc.*,
  474 F. Supp. 2d 866 (S.D. Tex. Feb. 7, 2007)...............................................17, 18

*Loy v. Rehab Synergies, L.L.C.*,
  71 F.4th 329 (5th Cir. 2023) ...............................................................................18

*Pierce v. Wyndham Resorts, Inc.*,
  922 F.3d 741 (6th Cir. 2019) ..............................................................................12

vi

*Powell v. One Source EHS, L.L.C.*,
No. 21-161, 2021 WL 4227064 (M.D. La. Sept. 16, 2021) ..............................24

*Pulliam v. Allen*,
466 U.S. 522 (1984)........................................................................................1

*Richard v. Eli Lilly & Co.*,
149 F.4th 901 ................................................................................12, 14

*Swales v. KLLM Transport Services, L.L.C.*,
985 F.3d 430 (5th Cir. 2021) ...................................................*passim*

*Walling v. W.D. Haden Co.*,
153 F.2d 196 (5th Cir. 1946) ..................................................2, 5, 21

*Will v. United States*,
389 U.S. 90 (1967)...........................................................................28

**Federal Statutes**

28 U.S.C. § 1292(a)(3)....................................................................10

28 U.S.C. § 1292(b) .......................................................................10

29 U.S.C. § 213(b)(6).....................................................................17

29 U.S.C.A. § 216(b).............................................................*passim*

**Regulations**

29 C.F.R. § 783.31 ...........................................................................5

29 C.F.R. § 783.32 ...........................................................................5

29 C.F.R. § 783.33 ....................................................................2, 5, 16

29 C.F.R. § 783.34 ...........................................................................5

**Other Authorities**

Federal Rule of Appellate Procedure 5(a)(3)........................................10

## STATEMENT OF RELIEF SOUGHT

Defendant-Petitioner, Alliance Liftboats, LLC ("Alliance"), seeks an order directing the district court to rescind its order certifying a collective action comprised of hundreds of employees—including captains, engineers, and deckhands—who worked on any of Petitioner's liftboats to participate in this collective action premised on claims brought by a single cook and to instruct the court to redetermine the collective action certification consistent with this Court's opinion in *Swales v. KLLM Transport Services, L.L.C.*, 985 F.3d 430 (5th Cir. 2021) and *Adams v. All Coast, L.L.C.*, 15 F.4th 365 (5th Cir. 2021).[1]

Because the relief sought in this petition is in response to class members rapidly and actively joining the collective action, Alliance has simultaneously filed a motion for stay while this petition is pending.

## ISSUE PRESENTED

Plaintiff-Respondent Patrick Breaux ("Plaintiff" or "Breaux") alleges that he, a cook working aboard the L/B MIAMI, was misclassified as an overtime exempt seaman. After months of pre-certification discovery, the district court certified a collective class inclusive of every single one of Alliance's liftboat employees based

---

[1] Because Petitioner Alliance seeks an order restricting the district court, this petition may be characterized as seeking a writ of prohibition. *See Pulliam v. Allen*, 466 U.S. 522, 533–34 (1984) (discussing the differences between the two writs). If appropriate, Petitioner Alliance respectfully requests that this Court construe this petition as seeking a writ of prohibition rather than mandamus.

exclusively on an analysis of how frequently one of Alliance's liftboats spent in the jacked-up position.

This Petition presents two issues. First, Alliance challenges whether the district court erred in certifying a collective action without first "rigorously scrutinize[ing]" "all of the available evidence" to determine whether the employees included in the certified class are similarly situated in direct contravention of *Swales*. The Petition likewise questions whether the challenged order ignores this Court's holding in *Adams*, in concluding that the seaman status of every crewmember aboard any liftboat can be determined simply by looking at how frequently a liftboat spent in a jacked-up position and not, as this Court expressly instructed in *Adams*, based on an evaluation of "what the employees do, and not [] on a mere matter of a name, or the place of their work."[2]

The district court excused Plaintiff's failure to present *any* evidence of what any individual aboard any of the liftboats actually did and certified a collective class of every liftboat employee based exclusively on the location of the vessel. The certification order runs directly afoul of both *Swales* and *Adams* and must be set aside.

---

[2] *Id.* at 369 (quoting *Walling v. W.D. Haden Co.*, 153 F.2d 196, 199 (5th Cir. 1946)); *see also id.* at 370 ("The inquiry is 'the character of the work' the plaintiffs did, 'not on what it is called or the place where it is performed.'" (quoting *Coffin v. Blessey Marine Services, Inc.*, 771 F.3d 276, 280 (5th Cir. 2014) (quoting 29 C.F.R. § 783.33))).

2

## **INTRODUCTION**

Alliance respectfully submits this petition for writ of mandamus in response to the district court's October 6, 2025 Order and Reasons granting Plaintiff's Motion to Certify a Collective Action (the "Collective Action Order"). Plaintiff-Respondent Patrick Breaux, a cook, filed suit against Alliance under the FLSA claiming he was misclassified as an overtime exempt seaman, eventually moving the district court to certify the collective action—an order that resulted in notice being sent to hundreds of Alliance employees without the Plaintiff meeting his burden of proving Alliance employees who worked in various positions and on different vessels were similarly situated.

The challenged order drastically expands the scope of Alliance's liability, opening the floodgates to hundreds of new parties premised on the district court's conclusion that *every* single employee aboard *any* of Alliance's nine liftboats, from the captain to engineers and deckhands, are "similarly situated" to a single cook aboard the L/B MIAMI. Absent mandamus, Alliance cannot challenge the district court's threshold finding that a cook's duties are sufficiently similar to the duties of the employees responsible for the vessel's navigation and safety. This ruling is in direct conflict with this Court's precedent in *Swales* and obfuscates the proper basis for certifying a collective action.

PD.60712888.9

Because, absent mandamus, this important issue will evade the Court's review, the Collective Action Order warrants review and correction by this Court.

## RELEVANT BACKGROUND

### A.    The Fair Labor Standard Act

Section 216(b) of the Fair Labor Standards Act (the "FLSA") authorizes collective actions against employers to "be maintained . . . by any one or more employees and on behalf of himself or themselves and other employees similarly situated."[3] Collective actions are an enforcement mechanism unique to the FLSA. For a collective action proceeding, plaintiffs must affirmatively opt in to join the lawsuit to pursue their claims, a right that becomes wholly available to him only upon the certification of the collective action.

Since *Swales*, district courts in the Fifth Circuit may only grant certification and issue notice if, in the early stages of the case, plaintiffs can demonstrate, by a preponderance of the evidence, that notice recipients are "actually similar to the named plaintiffs."[4] "Put differently, with conditional certification [under the *Lusardi* approach] jettisoned, courts must now, at the outset of the case, determine whether any employees are similarly situated."[5]

---

[3] 29 U.S.C.A. § 216(b).

[4] *Swales*, 985 F.3d at 434.

[5] *Gomez v. Glob. Precision Sys.*, 636 F. Supp. 3d 746, 751 (W.D. Tex. 2022).

### B.   This Court's reasoning in *Adams* is instructive in determining which employees are similarly situated

In *Adams*, a crane operator working aboard the defendant's liftboat filed a collective action complaint arguing that he was improperly classified as an exempt seaman. Without motion practice and based solely on the parties' stipulation, the district court certified a class of crane operators and cooks. The district court later granted summary judgment in favor of the defendant on all claims. This Court, however, reversed and remanded for further proceedings consistent with its opinion.[6]

In doing so, this Court limited its holding to a finding that, based on the specific facts that case presented, the plaintiffs "were not engaged in seaman's work **when operating the cranes**."[7] As the court explained, to determine seaman status, courts must "look to what the employees do, and not [] on a mere matter of a name, or the place of their work."[8] Having so framed the issue, this Court ultimately determined that the plaintiff crane operators "were engaged in seaman's work when they performed their nautical duties, but not when using the hydraulic cranes."[9] This

---

[6] *Adams*, 15 F.4th at 375 ("Accordingly, we hold that the plaintiffs' crane operation was not seaman work for purposes of the FLSA exemption. Whether the plaintiffs qualify for the exemption otherwise will be decided on remand.").

[7] *Id.* at 371 (emphasis added); *see also id.* at 371 ("Thus, the plain meaning of 29 C.F.R. § 783.31, and the illustrative examples in §§ 783.32 and 783.34, suggest the employees were not engaged in seamen's work **when operating the cranes.**" (emphasis added)).

[8] *Id.* at 369 (quoting *Walling*, 153 F.2d at 199); *see also id.* at 370 ("The inquiry is 'the character of the work' the plaintiffs did, 'not on what it is called or the place where it is performed.'" (quoting *Coffin*, 771 F.3d at 280 (quoting 29 C.F.R. § 783.33))).

[9] *Id.* at 371.

PD.60712888.9

Court did not, however, hold that an individual's seaman status hinged on whether the vessel was jacked up or not. Not even close.

As this Court further explained, the plaintiffs, including the crane operators, were undoubtedly engaged in nautical work when they "stood lookout, checked the engine room, attached lifting devices to cables, spliced rope, cleaned and painted, steered the boat, and performed other traditional maritime duties related to navigation and upkeep," *including* when the vessel was jacked up.[10] This Court emphatically stated: "***If the crew had only serviced the liftboats while they stood stationary next to the oil platforms, that would have been seamen's work without question***."[11] Thus, this Court delineated that even this kind of upkeep would certainly fall within exempt seaman work under the FLSA.

### C.    Plaintiff files the instant FLSA collective action against Alliance

Alliance provides services which include, *inter alia*, offshore oil field decommissioning and reclamation, project management, engineering solutions, intervention, maintenance, repair, heavy lift, and commercial diving services. Alliance uses various vessels to fulfill its services, including crew boats, supply boats, dive boats, and liftboats. Aside from deckhands, all Alliance employees who

---

[10] *Id.* at 371 & n.3.

[11] *Id.* at 376 (citing *Harkins v. Riverboat Servs.*, 385 F.3d 1099, 1104 (7th Cir. 2004)); *see also id.* at 375 ("[A] helmsman does not cease to be a seaman because he transfers to a casino boat that spends most of its time moored." (quoting *Harkins*, 385 F.3d at 1104)).

work on Alliance vessels, including its various liftboats, are U.S. Coast Guard licensed mariners who serve as masters, mates, engineers, qualified members of the engineering department, oilers, ordinary seamen, and/or able seamen.

Patrick Breaux, a cook who worked on various types of vessels in the Alliance fleet, including a single liftboat, sued Alliance and the L/B MIAMI *in rem* in the U.S. District Court for the Eastern District of Louisiana, alleging he was misclassified as an FLSA seaman exempt from overtime pay. He brought claims on behalf of himself and allegedly similarly situated liftboat crew members whom Breaux contends were not paid overtime.[12]

### D.    The District Court certified a class without regard to the employees' job duties.

Following a status conference, the district court ordered pre-certification class discovery consistent with *Swales*.[13] At the close of preliminary discovery, and even though Breaux himself *did* receive overtime pay, Breaux moved the district court to certify this case as a collective action consisting of *all* employees aboard *every*

---

[12] Initially, Breaux sought to certify a class of cooks and crane operators. Only later did Breaux expand his request to include *every* liftboat employee.

[13] 985 F.3d at 430 ("[A] district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.' And then it should authorize preliminary discovery accordingly. The amount of discovery necessary to make that determination will vary case by case, but the initial determination must be made, and as early as possible. In other words, the district court, not the standards from *Lusardi*, should dictate the amount of discovery needed to determine if and when to send notice to potential opt-in plaintiffs.").

7

Alliance liftboat who were paid a day rate with *no* overtime pay.[14] Despite this Court's unequivocal holding in *Adams* explaining that an employee's FLSA seaman status depends not on *where* the liftboat is but on *what* that employee is doing while aboard the liftboat, including when it is jacked-up,[15] and this Court's instruction in *Swales* for district courts to "rigorously scrutinize the realm of 'similarly situated' workers" before certifying a class,[16] Breaux rested his request for class certification *exclusively* on an analysis of the average time the L/B MIAMI, a single vessel in Alliance's multi-vessel fleet, spent jacked-up over the course of a two-year period.

The lack of evidence as to what any employee, including Breaux himself, actually did while aboard a liftboat notwithstanding, the district court found that every Alliance employee aboard every liftboat was "similarly situated" to Breaux's status as a cook on a single liftboat. Having so concluded, the district court certified Breaux's requested class without modification or limitation.[17]

Specifically, the district court conferred the right to join Breaux's lawsuit to those falling within the following class definition:

> All individuals employed by Alliance Liftboats, LLC and/or Helix
> Energy Solutions [*which is not and never has been a party to this*

---

[14] Alliance maintains that, notwithstanding Breaux's receipt of overtime wages, its decision to do so in no way waives Alliance's position that Breaux was a seaman for purposes of the FLSA's overtime exemption.

[15] 15 F.4th at 370.

[16] 985 F.3d at 434.

[17] *See* Order Granting Collective Action, E.D. La. ECF No. 38 (attached to this Petition).

8

*lawsuit*] as crewmembers of the following vessels: L/B GALVESTON; L/B LAFAYETTE; L/B NEW ORLEANS, L/B HOUSTON; L/B MEMPHIS; L/B NASHVILLE; L/B CHARLESTON; L/B MIAMI; and L/B DALLAS for the [to be determined time period] who performed a substantial amount of non-seaman work, yet were misclassified as exempt from overtime.[18]

Notwithstanding the class definition's imprecision in including both a non-party and legal conclusions on yet-to-be resolved disputes, the district court's order made clear that this now-certified class included every employee on any liftboat who was paid a day rate.[19]

The district court issued its collective action order in contravention of this Court's directly applicable precedent and the plain text of 29 U.S.C.A. § 216(b), exponentially expanding this single plaintiff's claimed misclassification to a host of employees whom he failed to show are similarly situated to him, thereby "exert[ing]" the kind of "formidable settlement pressure" this Court expressly cautioned against without holding Plaintiff to his burden of proof.[20]

---

[18] *Id.* at 20–21.

[19] *Id.* at 17–18 ("In the end, ***the Court finds the putative members of the collective are similarly situated*** as there is a common question at issue in this case—whether the putative members of the collective working on liftboats were affected by a common policy or practice classifying all of them as FLSA-exempt seaman rendering a service that was primarily an aid in the operation of such vessel as a means of transportation, without regard to whether they performed a substantial amount of work of a different character." (emphasis added)).

[20] *Swales*, 985 F.3d at 436.

9

**E.    Appeal as of right sought from this Court and permissive appeal and accompanying stay sought from the district court.**

Due to the claims asserted in admiralty in this matter, Alliance sought appellate review under 28 U.S.C. § 1292(a)(3). However, this Court dismissed the appeal on December 18, 2025, returning jurisdiction over the collective action certification back to the district court on January 8, 2026.

As appellate review is essential to determining if the correct legal standard has been applied to certifying this collective action, which will otherwise be unreviewable, Alliance requested that the district court certify, or, in the alternative, alter, its Collective Action Order as immediately appealable pursuant to Federal Rule of Appellate Procedure 5(a)(3) and 28 U.S.C. § 1292(b). That request, along with a request to stay proceedings pending appeal, was denied on February 12, 2026.[21]

**F.    Alliance seeks relief from this Court.**

Alliance now files this petition for a writ of mandamus. Because the relief sought in this petition is in response to class members rapidly and actively joining the collective action, Alliance is simultaneously filing a motion for a stay of the order pending resolution of this petition.

---

[21] *See* Order and Reasons Denying Motion to Certify Collective Action Order as Immediately Appeable, E.D. La. ECF No. 87 (attached to this Petition).

10

## REASONS FOR GRANTING THE WRIT

**I.    The District Court Erred by Failing to Evaluate What Alliance's Employees Actually Did in Certifying the Collective Action.**

By ordering notice be sent to employees notwithstanding the kind of work they actually did on Alliance's vessels, the district court's order constitutes reversible error. As a matter of binding precedent, the district court had to evaluate, in determining whether Plaintiff was similarly situated to the purported class, what the other employees actually did. By failing to evaluate the work performed by these other employees, much of which falls under the seaman exception to the FLSA, the collective action was improperly certified.

Moreover, the district court's opinion in *Hamm v. Acadia Healthcare Co., Inc.*, demonstrates that the collective action certification cannot be challenged even if further evidence is discovered that the collective class is not similarly situated to Plaintiff.[22] Alliance contends that the district court's ruling in *Hamm* prevents any relief in this matter without mandamus, as there will be no way to decertify and effectively no opportunity for Alliance to narrow this action to those employees who were allegedly not paid overtime when working a non-exempt job and paid a day rate.

---

[22] *See Hamm v. Acadia Healthcare Co., Inc.*, 748 F. Supp. 3d 404, 412 (E.D. La. 2024) (Morgan, J.) ("[T]he Court finds once certified under the *Swales* framework, after an opportunity to conduct preliminary discovery and fully brief the issues, there is no justification for a motion to decertify and to allow such a motion would be a waste of judicial resources.").

11

## A.     The District Court Erred in Certifying this Collective Action.

The district court had to consider what jobs Alliance employees performed, not solely that they worked on Alliance vessels or were paid a certain rate, in determining which employees were similarly situated for joining the collective. "Whether other employees are similarly situated for the purpose of joining an FLSA suit typically depends on whether they performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs were."[23] Thus, in effect, post-*Swales*, a district court's certification order makes an affirmative finding that the class of employees eligible to opt-in "performed the same tasks and were subject to the same policies," a threshold finding that liability may be determined on a class-wide basis.

"The plain text of the FLSA states that plaintiffs must be similarly situated if they are to proceed collectively,"[24] and "*Swales* demands that district courts decide whether any employees are similarly situated before the court facilitates sending an opt-in notice to potential plaintiffs."[25] "[A]n employee can't properly join the

---

[23] *Clark v. A&L Homecare and Training Ctr.*, LLC, 68 F.4th 1003, 1011 (6th Cir. 2023) (disagreeing with this Court's holding in *Swales* on what showing a plaintiff must make as to similarly situated status before notice may issue to non-parties) (citing *Pierce v. Wyndham Resorts, Inc.*, 922 F.3d 741, 745–46 (6th Cir. 2019)).

[24] *Richard v. Eli Lilly & Co.*, 149 F.4th 901, 911 (disagreeing with this Court's holding in *Swales* as to what a plaintiff must prove with respect to similarly situated status before notice may issue to non-parties) (citing 29 U.S.C. § 216(b)).

[25] *Gomez*, 636 F. Supp. 3d at 754 (citing *Swales*, 985 F.3d at 442–43).

collective (or file effective written consent) unless they are 'similarly situated' to the named plaintiffs."[26] Indeed, "notice sent to employees who are not, in fact, eligible to join the suit amounts to solicitation of those employees to bring suits of their own."[27]

Here, the district court granted Breaux's motion for class certification, notwithstanding his failure to provide the district court with any evidence capable of demonstrating that he was similarly situated to any other putative class member. Nevertheless, in what began as a mere allegation that a single liftboat's cook was similarly situated to all other liftboat employees is now a conclusive decision of the district court.

This sweeping ruling, which certified a collective action comprising all Alliance (and non-party Helix Energy Solutions) employees on nine different vessels falls short of this Court's instruction in *Swales* directing district courts to "rigorously scrutinize the realm of 'similarly situated' workers" before certifying a collective action.[28] This Court did not address *how* a district court should identify, at the outset of the case, what legal considerations will be material to determining whether a group of employees is similarly situated.[29] Other federal circuits, in discussing *Swales*, instead

---

[26] *Id.* at 753.

[27] *Clark*, 68 F.4th at 1010 (citing *Swales*, 985 F.3d at 434).

[28] *Swales*, 985 F.3d at 434.

[29] *Id*. at 441.

affirmatively require that a plaintiff establish that a purportedly similarly situated employee performed the same tasks and was subject to the same policies as other employees.[30] The parties, the Circuit, and the jurisprudence are still attempting to determine what the Court in *Swales* meant by applying case-specific, material legal considerations and if they include a determination of what work each employee did and which policy specifically governed each employee. It is Alliance's position that, in this context, the Fifth Circuit's holding in *Adams* fills that gap, such that this Court's guidance how to determine who is a seaman should have controlled here.

      **1.**      **The District Court should have relied upon the *Adams* Court's determination that what employees actually do is central to the similarly situated inquiry.**

As explained *supra*, this Court's decision in *Adams* concerned a crane operator working on a liftboat who filed a collective action complaint arguing that he was improperly classified as an exempt seaman. In reversing the certification of a collective action, this Court further detailed, the plaintiffs, including the crane operators, were undoubtedly engaged in nautical work when they "stood lookout, checked the engine room, attached lifting devices to cables, spliced rope, cleaned and painted, steered the

---

[30] *See Clark*, 68 F.4th at 1011 (disagreeing with the Fifth Circuit's holding in *Swales* on what showing a plaintiff must make as to similarly situated status before notice may issue to non-parties, where a showing should establish that "Whether other employees are similarly situated for the purpose of joining an FLSA suit typically depends on whether they performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs were."); *see also Richard*, 149 F.4th at 911 (disagreeing with the Fifth Circuit's holding in *Swales* as to what a plaintiff must prove with respect to similarly situated status before notice may issue to non-parties).

boat, and performed other traditional maritime duties related to navigation and upkeep," *including* when the vessel was jacked up.[31] As this Court stressed: "***If the crew had only serviced the liftboats while they stood stationary next to the oil platforms, that would have been seamen's work without question***."[32] Thus, the fact that the liftboats were jacked up or not was not material to the Court's determination of the similarly situated analysis.

In this case, other than the crane operators (which Breaux was not), every Alliance liftboat crewmember remained on the liftboat, "perform[ing] traditional maritime duties related to [the liftboat's] navigation and upkeep" while it remained stationary next to the platform.[33] When they were not operating the crane, crane operators were also responsible for fulfilling these same nautical duties. As this Court stated in *Adams*, this is "without question" exempt seaman work.[34]

Despite *Adams'* clear dictates, the district court certified a class of every single employee on every single Alliance vessel based solely on the ***immaterial*** issue of the amount of time a single liftboat, the L/B MIAMI, spent jacked up. Breaux offers no

---

[31] *Id.* at 371 & n.3.

[32] *Id.* at 376 (citing *Harkins*, 385 F.3d at 1104); *see also id.* at 375 ("[A] helmsman does not cease to be a seaman because he transfers to a casino boat that spends most of its time moored." (quoting *Harkins*, 385 F.3d at 1104)).

[33] *See* September 5, 2025 Declaration of Jared Chiasson, attached hereto as **Supplemental Exh. 1** (Sept. 5 Chiasson Decl.), at ¶ 7.

[34] *Adams*, 15 F.4th at 376 (citation omitted).

evidence of what any category of employee was doing while the vessel was jacked up and admits that while the vessel was underway or standing by, the employees were performing exempt seaman work. But as Breaux explains in his Complaint, "[a] liftboat has multiple roles onboard, and different individuals fulfill different purposes, some of which involve using the liftboat as a means of transportation, and others of which are not."[35] In spite of his own allegations, Breaux nevertheless fails to account for these material differences in what each category of employee does. As *Adams* makes clear, the required analysis of similarly situated status is much more nuanced than simply whether the liftboat is jacked up or not. Certifying a class inclusive of ***every*** liftboat employee ignores the Fifth Circuit's clear dictates that the seaman exemption depends on "'the character of the work' the plaintiffs did, 'not on what it is called or the place where it is performed.'"[36]

The vessel's status (i.e., whether it was jacked-up) should have been immaterial—and certainly not dispositive—to the district court's similarly situated analysis. Instead, the district court should have evaluated what Plaintiff presented as evidence of what the purportedly similarly situated employees did on the relevant vessels to determine if those employees were similarly situated. Plaintiff presented no such evidence. The district court assumed that all employees paid a day rate were

---

[35] Cmpl., at ¶ 3.

[36] *Adams*, 15 F.4th at 370 (quoting *Coffin*, 771 F.3d at 280 (quoting 29 C.F.R. § 783.33)).

improperly denied overtime based on evidence of what a cook did on one vessel in Alliance's fleet.  The necessary inquiry to determine whether a cook, a galley hand, crane operator, engineer, captain, mate, etc. is a "seaman" under 29 U.S.C. § 213(b)(6) is simply too individualistic and fact-specific to lump every single maritime worker into one class with only a cook named as a plaintiff to represent them.[37]

Indeed, other than the class certified by stipulation in *Adams*, no other court has certified a class inclusive of both cooks and crane operators, let alone a class that includes every single crewmember onboard an entire fleet of vessels including captains, engineers, and deckhands. At base, Breaux fails to explain *how* his job duties as a cook are the same as those of a crane operator or any other member of the vessel's crew. This is because he cannot.

The material distinctions and relevant analyses required for determining when, for example, a cook versus a crane operator is considered exempt, preclude a finding that a cook, like Breaux, is similarly situated to a crane operator or other positions.[38] Being that Breaux, the only proposed class representative, worked exclusively as a cook, certifying a class inclusive of crane operators, captains, engineers, deckhands and every other employee working on an Alliance liftboat, regardless of the differences in

---

[37] *See Kaloum v. Stolt Offshore, Inc.*, 474 F. Supp. 2d 866, 870 (S.D. Tex. Feb. 7, 2007).

[38] *Dreyer v. Baker Hughes Oilfield Ops., Inc.*, No. 08-1212, 2008 WL 5204149, at *2 (S.D. Tex. Dec. 11, 2008) ("[I]f the job duties among potential members of the class vary significantly, then class certification should not be granted.").

PD.60712888.9

job requirements, vessel capacity, vessel charter, and hitch schedule, is impermissibly broad and would fly in the face of the Fifth Circuit's holdings in both *Adams* and *Swales*. Setting aside the clear differences in these employees' primary job duties, because the ratio of seaman to non-seaman's work may differ broadly between an individual cook, a crane operator, a captain or an engineer, it follows that cooks, captains, engineers, and crane operators are not similarly situated to one another.[39] Breaux is simply not similarly situated to the wide expanse of individuals he seeks to represent.

Contrary to the district court's position, this Court's holding in *Adams* also forecloses the broad approach that this Court applied to the facts in *Loy v. Rehab Synergies, L.L.C.*, where this Court looked past individual differences in the employee's work and reporting responsibilities.[40] In *Loy*, this Court determined that the similarly situated analysis, as applied to different kinds of therapists with different billing requirements who were all subject to the same overtime policy, did not have to consider differences that were irrelevant to the alleged FLSA overtime violation.[41] But that case did not concern seamen—who are exempt from those same FLSA requirements. The district court's reliance on *Loy* in contravention to *Adams* mistakes the relevant area of

---

[39] *Kaloum*, 474 F. Supp. 2d at 873.

[40] *Loy v. Rehab Synergies, L.L.C.*, 71 F.4th 329, 339 (5th Cir. 2023).

[41] *Id.*

PD.60712888.9

labor law at issue here, *i.e.*, the relationship between seaman status and FLSA overtime requirements. Thus, as the seaman status of these employees must be considered at the threshold, the district court was required to analyze the kind of work that the purportedly similarly situated employees performed on Alliance's vessels. Otherwise, proceeding collectively when it has not been determined if these other employees are completely exempt from these overtime requirements would be in direct violation of the FLSA's plain language.

For these reasons, the common question of whether the employees are FLSA-exempt seaman could not be answered on a class-wide basis.

### 2. Proceeding Collectively Was Improper Given the Circumstances of Breaux's Employment.

A key consideration in determining whether potential members are "similarly situated" is whether there are "*substantial* allegations that potential members were together the victims of a single decision, policy, or plan."[42] Breaux has the burden of demonstrating "similarity among the individual situations . . . some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]."[43]

---

[42] *Hamm v. Acadia Healthcare Co., Inc.*, No. 20-01515, 2022 WL 2713532, at *5 (E.D. La. July 13, 2022) (Morgan, J.) (emphasis added).

[43] *Crain v. Helmerich & Payne Int'l Drilling Co.*, No. 92-0043, 1992 WL 91946, at *2 (E.D. La. Apr. 16, 1992).

19

Far from carrying his burden, Breaux simply alleges Alliance implemented a blanket policy of never paying its employees overtime, regardless of the nature of the employee's work.[44] In his attempt to substantiate the existence of the alleged policy, instead of pointing to evidence, Breaux relies on a glaring logical fallacy: the notion that the absence of evidence to the contrary somehow substantiates his claim.[45] In light of the Fifth Circuit's holding in *Swales*, a plaintiff can no longer simply allege the existence of a policy without offering any concrete evidence to substantiate its existence. Yet, in this case, Breaux essentially seeks to manufacture a policy to justify the creation of a class, without presenting any evidence to support a conclusion that such a policy exists. Not only has this Court deemed certification inappropriate under such circumstances,[46] Breaux's own pay stubs directly contradict his claims.

Moreover, to certify a collective action including employees that may perform FLSA exempt seaman work, Breaux bore the burden of showing that the inquiry as to whether he and each putative member of the prospective FLSA class are seaman can

---

[44] *See, e.g.*, Plaintiff-Respondent's Motion to Certify Collective Action, E.D. La. ECF No. 19-1, at 7 ("Regardless of the title, though, Alliance paid each of those employees a day rate without overtime.") (attached to this Petition).

[45] The only support Plaintiff provides to substantiate the alleged blanket policy of denying overtime is to point to the absence of evidence, namely by noting that there are no crane logs, kitchen logs, or other pieces of paper that show what work was being performed. E.D. La. ECF No. 19-1, at 16.

[46] *See Basco v. Wal-Mart Stores, Inc.,* No. 00-3184, 2004 WL 1497709, at *7 (E.D. La. July 2, 2004) (finding that plaintiffs sought to make a policy to justify the creation of a class of all employees not paid overtime and had failed in their burden of proof to demonstrate identifiable facts or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency).

PD.60712888.9

be answered collectively. Though the FLSA does not define "seaman," this Court determined that the seaman exemption "applies only when an employee performs nautical duties."[47] This requires that courts "look to what the employees do," because "what each employee actually does determines its application to him."[48] Thus, the inquiry into seaman status for each putative member of the potential FLSA class is fact intensive and "requires a highly individualized inquiry into each potential opt-in's circumstances."[49] In fact, the individualized nature of this analysis "is why *misclassification cases*" such as this one "*rarely make it to trial on a collective basis*."[50]

In this case, the distinctions between the putative class's individual working conditions and circumstances plainly predominate. Although Breaux evidently acknowledges that, at least for a portion of the time, he is in fact an FLSA exempt seamen,[51] the factual predicate for making such a finding for each class member simply cannot be answered collectively. For example, because the vessels leave from different ports and sail to different destinations and vice-versa depending on the charter they are

---

[47] *Adams*, 15 F.4th at 369.

[48] *Walling*, 153 F.2d at 199.

[49] *Loy*, 71 F.4th at 336.

[50] *Swales*, 985 F.3d at 442 (referring to the individualized nature of the economic realities test).

[51] *See, e.g.*, Plaintiff-Respondent's Motion to Certify Collective Action, E.D. La. ECF No. 19-1, at 7 ("Alliance's master, daily and rough vessel logs show the amount of time that Alliance liftboats were underway, which is the only time that Alliance employees performed activities that aided the liftboats as a means of transportation.").

21

currently working under, the time each vessel spends in transit varies from hitch-to-hitch, charter-to-charter. Yet, it is this travel time during which Breaux *admits* the employees are performing exempt seamen work.

In *Clarke v. Pei Wei Asian Dinner LLC*, for example, the district court granted the defendant's motion to decertify the class, post-*Swales*, given that "the evidence indicates that the factual and employment setting of each Plaintiff varied significantly," such that an individualized analysis of the frequency with which each plaintiff performed tasks that were considered "managerial" and "non-managerial" for purposes of applying of the executive exemption was "unsuitable for collective action."[52] The court's reasoning for decertifying the class in *Clarke* supports why no class should have been certified in the first instance in this case.

Despite the vast distinction between Breaux, a cook responsible for "[t]he preparation and display of cooked meals that fulfill the approved menus of the Master," and individuals employed as masters, mates, and engineers, tasked with commanding the vessel, Breaux claims he is similarly situated to each of these crew members. As detailed above, with the exception of a single proposed opt-in Plaintiff, Patrick Sims, an ordinary seaman who provided a declaration explaining that he "sometimes" used the crane, "sometimes" worked in the galley, and "sometimes" loaded and unloaded

---

[52] *Clarke v. Pei Wei Asian Dinner LLC*, No. 20-800, 2023 WL 2518805 (N.D. Tex. Mar. 13, 2023).

"the vessel," Breaux offers no evidence of how any employee was paid during the relevant time period.[53]

Against the backdrop of these individualized differences, Breaux simply has not demonstrated that he is similarly situated to the putative class members. "[W]here, as here, 'there are significant differences in employment experiences, the procedural advantages of a collective action evaporate,' and the court's ability to render 'a just verdict on the merits is seriously undermined.'"[54]

Additionally, in upending the *Lusardi*-approach, the *Swales* Court cautioned against the dangers of collective actions: "(1) the opportunity for abuse (by intensifying settlement pressure no matter how meritorious the action); and (2) the appearance of court-endorsed solicitation of claims (by letting benign notice-giving for case-management purposes warp into endorsing the action's merits, or seeming to, thus

---

[53] Patrick Sims, another Alliance employee, offered a declaration in support of the Motion to Certify the Collective Action. However, Sims' statement demonstrates the sporadic nature of the work performed by those Alliance employs as ordinary seamen, able-bodied seamen, deck hands, masters, engineers, and mates aboard its myriad vessels.

[54] *Hampton v. McDermott Int'l, Inc.*, No. 19-200, 2024 WL 1664753, at *7 (W.D. La. Apr. 17, 2024) (quoting *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 568 (E.D. La. 2008)); *see also id.* at *6 (denying motion for class certification because "Plaintiffs and the putative collective members had different shift times, different supervisors, and worked on different crews at different locations within the over-five-hundred-acre Facility").

23

stirring up unwarranted litigation)."[55] Accordingly, "considerations of adverse consequences [must] inform the Court's analysis."[56]

Here, these dangers are myriad and present in this litigation where it has not been proven that any Alliance employee is similarly situated to Breaux. Thus, the danger of court-ordered solicitation is incredibly critical as notice has been issued without determining which of those receiving notice is even in the same set of circumstances as Breaux. The dangers of abuse and solicitation additionally grow the longer that this Collective Action Order remains intact.

### B. The District Court's precedent has foreclosed decertification upon a subsequent showing that the class members are not similarly situated or are otherwise not appropriately considered on a class basis.

The district court's own holding in *Hamm v. Acadia Healthcare Co., Inc.*, forecloses decertification of a collective action even if further evidence is discovered that the collective class is not similarly situated to Plaintiff.[57] Alliance contends that mandamus is necessary here as the district court's ruling in *Hamm* disallows

---

[55] *Swales*, 985 F.3d at 442–43; *see also Behnken v. Luminant Mining Co., LLC*, 997 F. Supp. 2d 511, 516 (N.D. Tex. 2014) (explaining that the court must ensure that an 'employer is not unduly burdened by a frivolous fishing expedition'" (citations omitted)).

[56] *Powell v. One Source EHS, L.L.C.*, No. 21-161, 2021 WL 4227064, at *2 (M.D. La. Sept. 16, 2021).

[57] *See Hamm*, 748 F. Supp. 3d at 412 (Morgan, J.) ("[T]he Court finds once certified under the Swales framework, after an opportunity to conduct preliminary discovery and fully brief the issues, there is no justification for a motion to decertify and to allow such a motion would be a waste of judicial resources.").

decertification of this collective action—placing Alliance firmly outside of any way to narrow this enormous collective action to those employees who actually worked jobs that were eligible for overtime pay.

Thus, the collective action certification at issue in this case is made even more onerous as Alliance has no ability to decertify the class upon a showing of evidence that collective action is inappropriate here.

## II.   This Court should grant mandamus.

As explained above, the district court erred and acted without authority by ordering that the employees who worked on Alliance's vessel fleet, with no consideration of the actual work done by those employees, were similarly situated to the Plaintiff in this matter. This Court should correct this decision through mandamus.

When deciding whether mandamus is warranted, this Court asks "(1) whether the petitioner has demonstrated that it has 'no other adequate means to attain the relief [it] desires'; (2) whether the petitioner's 'right to issuance of the writ is clear and indisputable'; and (3) whether we, in the exercise of our discretion, are 'satisfied that the writ is appropriate under the circumstances.'"[58] Mandamus ordinarily issues to correct "a judicial usurpation of power or a clear abuse of discretion."[59] A district

---

[58] *In re Itron, Inc.*, 883 F.3d 553, 567 (5th Cir. 2018) (quoting *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004)).

[59] *Cheney*, 542 U.S. at 380 (cleaned up).

25

court has no authority to provide notice to employees who have not been demonstrated to be similarly situated to the Plaintiff, and doing so is a species of "judicial usurpation of power."

The question presented in this petition—whether a district court may certify a collective action without analyzing what the purportedly similarly situated employees actually did—is an important issue that addresses harmonizing this Court's opinions in *Swales* and in *Adams* and is a paradigmatic example of a question that warrants mandamus based on this Court's supervisory authority.

### A.    This issue will evade review without mandamus.

The first requirement is that the error presented "is truly 'irremediable on ordinary appeal.'"[60] Though "[t]hat is a high bar,"[61] Alliance has met it here. A collective action certification order cannot be appealed under the collateral order doctrine.[62] And as stated, this Court previously ruled that the collective action order did not provide grounds for appellate jurisdiction. Moreover, the district court declined to certify an interlocutory appeal.[63]

---

[60] *In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 352–53 (5th Cir. 2017*)* (citation omitted).

[61] *Id*.

[62] *See Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 931–33 (5th Cir. 2005).

[63] *See* Order and Reasons Denying Motion to Certify Collective Action Order as Immediately Appeable, E.D. La. ECF No. 87 (attached to this Petition).

Absent mandamus, the effect of *Adams* on the certification procedure outlined in *Swales* will not be reviewed in this or any other court of appeals due to this issue of notice and timing. Certainty in this area of law, which is bound to reoccur every time a collective action goes forward, is needed, and mandamus should be issued to provide such certainty.

**B.      This Court should grant mandamus because the district court erred in failing to evaluate what alliance's employees actually did in certifying the collective action.**

As discussed above, the district court's collective action certification was made in error and without reliance on this Court's precedent in *Adams*.  Because the district court has no authority to issue notice to employees that it has not determined are similarly situated, mandamus should be issued. Said differently, mandamus should be issued because the district court "ha[d] no judicial power to do what it purports to do."[64]

**C.      This Court should grant mandamus to harmonize its rulings in *Swales* and *Adams* and ruling that the determination of what employees actually do must be made in the similarly situated analysis.**

Finally, mandamus is only appropriate if Petitioners can show a " 'clear and indisputable' right to the writ."[65] It is not enough for Petitioners to show that the

---

[64] *Da Beers Consol. Mines v. United States*, 325 U.S. 212, 217 (1945).

[65] *In re Am. Lebanese Syrian Associated Charities, Inc.*, 815 F.3d 204, 206 (5th Cir. 2016) (quoting *Cheney*, 542 U.S. at 380).

district court erred or abused its discretion.[66] Rather, they must show that the district court clearly and indisputably erred such that "there has been a usurpation of judicial power."[67]

This Court has previously issued mandamus in collective action cases where certification and class notice were issued in direct contravention of the FLSA and federal law.[68] The same relief should be issued here, as the district court applied this Court's precedent in *Swales* without any consideration of the work that the purportedly similarly situated employees actually did on any of Alliance's vessels. The interplay between these two pivotal decisions is crucial and should be harmonized. This Court should rule that the *Swales'* similarly situated analysis, of course, is also determined by the *Adams'* inquiry of what work the other employees actually did.

Importantly, granting mandamus here will not commit this Court to mandamus review of every collective action case that comes before its Circuit. Rather, the clarification of the interplay of these incredibly important cases will save

---

[66] *Id.*

[67] *In re JP Morgan Chase & Co.*, 916 F.3d 494, 500 n.8 (5th Cir. 2019) (quoting *Will v. United States*, 389 U.S. 90, 95 (1967)).

[68] *In re A&D Interests, Inc.*, 33 F.4th 254, 259 (5th Cir. 2022); *In re Schlumberger Tech. Corp.*, 818 Fed. Appx. 304, 308 (5th Cir. 2020); *See In re JP Morgan Chase & Co.*, 916 F.3d at 499 (where the writ was denied, but this Court issued an opinion as a holding on the legal issues, which were squarely presented for decision, and to ensure that the district court there revisited its opinion).

28

time and judicial resources for collective action cases in the future, where the certification process should include an analysis of what jobs the purportedly similarly situated employees actually do.

For these reasons, mandamus should be issued here so that the district court's error in this matter may be corrected and so that the Circuit receives clarity on the proper framework for conducting the similarly situated analysis under the FLSA.

## CONCLUSION

The district court has conditionally certified a sweeping class without regard for what those employees did, including employees who are exempt from overtime. Absent intervention by this Court, there will be no opportunity to properly determine whether these employees are in fact similarly situated with Plaintiff.

This Court should grant this petition for writ of mandamus, directing the district court to rescind the above notice and redetermine if any of the purportedly similarly situated employees undertook work that was similar to that of Plaintiff Patrick Breaux's for purposes of representing a class in a collective action.

Respectfully submitted,

**PHELPS DUNBAR LLP**

By: _____

David M. Korn (Bar #21676)
Rebecca Sha (Bar #35317)
Stephanie M. Poucher (Bar #37263)
Brendan J. Besh (Bar #40280)
**PHELPS DUNBAR LLP**

29

Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504 566 1311
Facsimile: 504 568 9130
Email:      kornd@phelps.com
            rebecca.sha@phelps.com
            stephanie.poucher@phelps.com
            brendan.besh@phelps.com

**ATTORNEYS FOR DEFENDANT-
PETITIONER, ALLIANCE LIFTBOATS,
LLC**

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was filed on this 19th day of February, 2026, with the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system, and this filing was also sent to the following counsel of record:

> Harry E. Morse, harry@bohmanmorse.com
> Martin S. Bohman, martin@bohmanmorse.com
> **BOHMAN MORSE, LLC**
>
> Cayce C. Peterson, cayce@jjclaw.com
> Jeffrey P. Green, jeff@jjclaw.com
> **JJC LAW LLC**
>
> Michael A. Mahone, Jr., mike@mahonefirm.com
> **THE MAHONE FIRM LLC**
>
> Thomas M. Flanagan, tflanagan@flanaganpartners.com
> Anders F. Holmgren, aholmgren@flanaganpartners.com
> **FLANAGAN PARTNERS LLP**

_____

Rebecca Sha

**CERTIFICATE OF COMPLIANCE**
**WITH TYPE-VOLUME LIMITATION,**
**TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS**

1.     This brief complies with the type-volume limitation of Fed R. App. P.

21(d)(1) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f),

it contains 7,269 words.

2.     This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has

been prepared in proportionally-spaced typeface, including serifs, using Word, in

Times New Roman 14-point font, except for the footnotes, which are in

proportionally-spaced typeface, including serifs, using Word in Times New Roman

12-point font.

_____
                          Rebecca Sha


Dated: February 19, 2026

PD.60712888.9