# NO. 26-30091

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

## *IN RE* ALLIANCE LIFTBOATS, LLC

_____

## PETITION FOR WRIT OF MANDAMUS FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA, HON. SUSIE MORGAN, CIVIL ACTION 2:24-CV-01000

_____

## MOTION FOR STAY OF DISTRICT COURT PROCEEDINGS PENDING REVIEW OF PETITION FOR WRIT OF MANDAMUS

_____

David M. Korn (Bar #21676)
Rebecca Sha (Bar #35317)
Stephanie M. Poucher (Bar #37263)
Brendan J. Besh (Bar #40280)
**PHELPS DUNBAR LLP**
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504 566 1311
Facsimile: 504 568 9130
Email:   kornd@phelps.com
         rebecca.sha@phelps.com
         stephanie.poucher@phelps.com
         brendan.besh@phelps.com

**ATTORNEYS FOR DEFENDANT-PETITIONER, ALLIANCE LIFTBOATS, LLC**

# CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that, pursuant to 5TH CIR. R. 28.2.1, the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Patrick Breaux, plaintiff-respondent

2. Counsel for plaintiff-appellee:

    Harry E. Morse
    Martin S. Bohman
    **BOHMAN MORSE, LLC**
    400 Poydras St., Suite 2050
    New Orleans, LA 70130

    Cayce C. Peterson
    Jeffrey P. Green
    **JJC LAW LLC**
    111 Veterans Memorial Blvd.
    Heritage Plaza, Suite 810
    Metairie, LA 70005

    Michael A. Mahone, Jr.
    **THE MAHONE FIRM LLC**
    5190 Canal Blvd, Suite 102
    New Orleans, LA 70124

    Thomas M. Flanagan
    Anders F. Holmgren
    **FLANAGAN PARTNERS LLP**
    201 St. Charles Ave., Ste. 3300
    New Orleans, LA 70170

3. Alliance Liftboats, LLC, defendant-petitioner

4. Helix Energy Solutions Group, Inc.

5. Counsel for defendant-appellant:

   David M. Korn
   Rebecca Sha
   Stephanie M. Poucher
   Brendan J. Besh
   **PHELPS DUNBAR LLP**
   365 Canal St., Suite 2000
   New Orleans, LA 70130

SO CERTIFIED, this the 24th day of February, 2026.

_____
Rebecca Sha

## MOTION FOR STAY PENDING REVIEW

**MAY IT PLEASE THE COURT:**

Defendant-Petitioner Alliance Liftboats, LLC ("Alliance"), which, through undersigned counsel, moves this Honorable Court for a Stay of District Court Proceedings pending review of the district court's October 6, 2025 Order and Reasons granting Plaintiff Patrick Breaux's Motion to Certify a Collective Action (the "Collective Action Order").[1] A stay of the proceedings before the district court is necessary to prevent further harm to Alliance as this collective action proceeds, since the certification of a collective action here was in violation of this Court's precedent and the equities run in favor of granting a stay to allow this Court to review the district court's order without additional harm and prejudice befalling Alliance. Thus, Alliance prays that this Court stay the collective action proceedings including discovery before the district court as this Court reviews Alliance's pending Petition for Writ of Mandamus, seeking review of the otherwise unappealable Collective Action Order.

---

[1] This Motion for Stay was filed on February 24, 2026, rather than the same day as the Petition for Writ of Mandamus, February 19, 2026, due to the time needed for the Clerk's Office to process the Petition. The Motion for Stay was filed as soon as Notice from this Honorable Court was received that the matter had been assigned a case number.

## PROCEDURAL BACKGROUND

The district court considered Plaintiff Breaux's Motion to Certify a Collective Action and ruled in favor of Plaintiff on October 6, 2025, conferring the right to join Breaux's lawsuit to those falling within the certified class definition.

As noted more fully in Alliance's Petition for Writ of Mandamus, the FLSA permits an action against an employer "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated."[2] Since *Swales*, district courts in the Fifth Circuit may only grant certification and issue notice if, in the early stages of the case, plaintiffs can demonstrate that notice recipients are "actually similar to the named plaintiffs," by a preponderance of the evidence.[3] "The plain text of the FLSA states that plaintiffs must be similarly situated if they are to proceed collectively,"[4] and "*Swales* demands that district courts decide whether any employees are similarly situated before the court facilitates sending an opt-in notice to potential plaintiffs."[5] After receiving notice of the right to join the lawsuit, each similarly situated employee must affirmatively choose to exercise their right to "become parties" by opting into the collective

---

[2] 29 U.S.C. § 216(b).

[3] *Swales v. KLLM Transport Services, L.L.C.*, 985 F.3d 430, 434 (5th Cir. 2021).

[4] *Richard v. Eli Lilly & Co.*, 149 F.4th 901, 911 (citing 29 U.S.C. § 216(b)).

[5] *Gomez*, 636 F. Supp. 3d at 754 (citing *Swales*, 985 F.3d at 442–43).

action.[6] However, Alliance respectfully avers that employees were included in the district court's class definition who are not similarly situated to the sole named Plaintiff, Mr. Breaux.[7]

Due to the claims asserted in admiralty in this matter, Alliance sought appellate review as of right under 28 U.S.C. § 1292(a)(3). However, this Honorable Court dismissed the appeal on December 18, 2025, returning jurisdiction over the collective action certification back to the district court on January 8, 2026. As Alliance contends that appellate review is essential to determining if the correct legal standard has been applied in certifying this collective action before notice is sent to all Alliance employees during the applicable time period, Alliance requested the district court certify, or, in the alternative, alter, its Collective Action Order as immediately appealable pursuant to Federal Rule of Appellate Procedure 5(a)(3) and 28 U.S.C. § 1292(b). Paired with this request, Alliance also moved the district court

---

[6] *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013); *accord Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1047 n.1 (7th Cir. 2020).

[7] Specifically, the district court conferred the right to join Breaux's lawsuit to those falling within the following class definition:

> All individuals employed by Alliance Liftboats, LLC and/or Helix Energy Solutions [*which is not and never has been a party to this lawsuit*] as crewmembers of the following vessels: L/B GALVESTON; L/B LAFAYETTE; L/B NEW ORLEANS, L/B HOUSTON; L/B MEMPHIS; L/B NASHVILLE; L/B CHARLESTON; L/B MIAMI; and L/B DALLAS for the [to be determined time period] who performed a substantial amount of non-seaman work, yet were misclassified as exempt from overtime.

Collective Action Order, E.D. La. ECF No. 38, at 20–21 (Attached to Petition for Writ of Mandamus).

to issue a stay for the Collective Action Order so that the request for appellate review may be allowed to go forward without causing irreparable damage to Alliance in this matter.

However, on February 12, 2026, and after notice was issued to virtually all Alliance employees due to the broad class definition, the district court denied both the motion to certify the Collective Action Order as immediately appealable and the motion to stay proceedings. Alliance respectfully requests that this Court stay collective action proceedings in the district court including discovery pending review of the Petition for Writ of Mandamus to avoid further harm to Alliance.[8]

## ARGUMENT

### I.  LEGAL STANDARD

A motion for stay pending appeal is evaluated under a four-part test.[9] A movant must show: (1) a "likelihood of success on the merits"; (2) "irreparable injury if the stay is not granted"; (3) "whether granting the stay would substantially harm the other parties"; and (4) "whether granting the stay would serve the public interest."[10]

---

[8] Moreover, a stay is requested in this matter as a scheduling conference has already been called for in the district court which will schedule a trial date in this matter. As Alliance contends that the district court erred in this matter and has allowed this matter to proceed without a determination that the other employees are similarly situated, a stay is additionally needed to prevent further harm and a trial on the merits. *See* E.D. La. ECF No. 95.

[9] *Arnold v. Garlock*, 278 F.3d 426, 438 (5th Cir. 2001). This Court has previously found that a Motion to Stay Pending Appeal is the proper mechanism to request a stay during the pendency of a Petition for Writ of Mandamus. *See In re JPMorgan Chase & Co.*, 916 F.3d 494, 499 (5th Cir. 2019).

[10] *In re First South Sav. Ass'n*, 820 F.2d 700, 704 (5th Cir. 1987).

A movant "need not always show a probability of success on the merits."[11] When a "serious legal question involved," the movant "need only present a substantial case on the merits" and "show that the balance of equities weighs heavily in favor of granting a stay."[12]

## II.　ARGUMENT

A stay of the Collective Action Order is warranted here because the question of law at issue is a "serious legal question," and the equities weigh in favor of granting the stay to allow for deliberation of this serious question without fear of irreparable harm. A stay would assist the parties in ensuring no steps are taken that would be totally and catastrophically undone by appellate review at the end of this litigation—where the entire lawsuit would potentially have to be repeated if the putative similarly situated employees are not entitled to participate in this lawsuit.

### A.　This Court Should Grant a Stay due to the Serious Legal Question Involved, and Alliance Has a Likelihood of Success on the Merits.

The question presented in the Collective Action Order is serious—whether the work that employees "actually do" aboard a vessel must be considered in defining the collective action class of individuals claiming to have been misclassified as FLSA exempt seaman. This question is made more serious due to the import of the district court's ruling in *Hamm v. Acadia Healthcare Co., Inc.*, 748 F. Supp. 3d 404,

---

[11] *Arnold*, 278 F.3d at 439 (quoting *Ruiz v. Estelle*, 666 F.2d 854, 856 (5th Cir. 1982)).

[12] *Id*. at 439 (quoting *Ruiz*, 666 F.2d at 856).

412 (E.D. La. 2024)—wherein the court held that similarly situated employees, once certified as a collective action, cannot be de-certified, even upon a showing that the employees are *not* similarly situated. Thus, defendants under the FLSA are placed between a rock and a hard place—they must win at the certification stage or risk never being given the opportunity to prove that the collective action members are not similarly situated, even when evidence of the fact that they are not similarly situated arises during discovery.

Therefore, the threshold determination of being similarly situated must include all of the relevant criteria to ensure that §216(b)'s requirements are met and that the district court rigorously scrutinize the evidence showing similarly situated status. In this case, the challenged order drastically expands the scope of Alliance's liability, opening the floodgates to a considerable number of new parties premised on the district court's conclusion that every single employee aboard any of Alliance's liftboats, from the vessel's captain to its deckhands, are "similarly situated" to a single cook aboard the L/B MIAMI based exclusively on an analysis of how much time the L/B MIAMI spent jacked-up. This ruling stems from the district court's legal interpretation of 29 U.S.C. § 216(b)'s similarly situated requirement to extend to FLSA exempt employees and other employees that Alliance contends are not "similarly situated." Thus, it is not a question of application or the facts of this case that are central to the appeal but, rather, whether

the district court should have considered "what the employees do" in certifying the collective.[13]

This is a serious legal question that supports the granting of a stay of the Collective Action Order so that this Honorable Court can definitively say whether purportedly similarly situated employees need to demonstrate evidence of actual similarity through an analysis of what the employees "actually do." As the district court's ruling instead authorized notice and the right to join this lawsuit to any Alliance liftboat employee, regardless of what work he actually performed on the vessel, there is a serious legal question as to whether this approach is reconcilable with this Court's directive in *Swales*.

Alliance also, for the same reasons, has a strong likelihood of success on the merits—as threshold determinations concerning the work done by similarly situated employees must be conducted before a collective action is certified. Since *Swales*, district courts in the Fifth Circuit may only grant certification and issue notice if, in the early stages of the case, plaintiffs can demonstrate that notice recipients are

---

[13] *Adams v. All Coast, L.L.C.*, 15 F.4th 365, 375 (5th Cir. 2021) (explaining that to determine FLSA seaman status, courts must "look to what the employees do, and not [] on a mere matter of a name, or the place of their work"); *see also Walling v. W.D. Haden Co.*, 153 F.2d 196, 199 (5th Cir. 1946) (explaining that exempt status depends on what the employees "actually do").

Indeed, in *Adams*, this Court further detailed, the plaintiffs, including the crane operators, were undoubtedly engaged in seaman work when they "stood lookout, checked the engine room, attached lifting devices to cables, spliced rope, cleaned and painted, steered the boat, and performed other traditional maritime duties related to navigation and upkeep," including when the vessel was jacked-up. *Adams*, 15 F.4th at 371 & n.3; *id.* at 370 (explaining that the seaman exemption depends on "'the character of the work' the plaintiffs did, 'not on what it is called or the place where it is performed'").

- 7 -

"actually similar to the named plaintiffs," by a preponderance of the evidence.[14] "Put differently, with conditional certification [under the *Lusardi* approach] jettisoned, courts must now, at the outset of the case, determine whether any employees are similarly situated."[15] Thus, certification here did not rely on an evidentiary finding of similarly situated employees but, rather, premised certification on the vessel's location. This ruling does not comply with the requirements set forth in *Swales*, which mandates "rigorous" scrutiny of the evidence demonstrating similarly situated status, nor does it comport with this Court's ruling in *Adams v. All Coast*. As such, Alliance has a substantial likelihood of succeeding on the merits.

For these reasons, the Collective Action Order addresses a serious legal question, on which Alliance will likely succeed, that this Court should address to delineate the governing legal standards that must inform courts' decisions in certifying collective actions. A stay is appropriate under these circumstances.

### B. The Equities Heavily Weigh in Favor of a Stay.

Moreover, the balance of the equities in this matter also heavily favors Alliance.

#### 1. Alliance will suffer irreparable harm if the district court, without a sufficient determination of whether other

[14] *Swales*, 985 F.3d at 434.

[15] *Gomez v. Glob. Precision Sys.*, 636 F. Supp. 3d 746, 751 (W.D. Tex. 2022).

- 9 -

**employees are similarly situated, requires further proceedings to take place.**

Irreparable injury will occur if a stay is not granted concerning the Collective Action Order. While the notice was issued to Alliance employees, Alliance, absent a stay, is still harmed as proceedings continue in the district court. Issuing discovery to each of these opt-in parties will be burdensome and would increase the time and expense needed to defend against individual complaints. A stay would also prevent the suit from progressing until there is a determination that these opt-in parties are deemed similarly situated by this Court.

Thus, the method of efficient litigation through collective action as this Court contemplated in *Swales* will be warped into a morass of uncertainty while the parties struggle to determine which employee is similarly situated. Indeed, as the Court explained, "notice sent to employees who are not, in fact, eligible to join the suit amounts to solicitation of those employees to bring suits of their own."[16] The harm Alliance will suffer—namely, notice being provided to employees ineligible to participate in the collective action as well as the cost and expense of defending against those ineligible claims—will be irreparable if no stay is granted.

---

[16] *Clark*, 68 F.4th at 1010 (citing *Swales*, 985 F.3d at 434).

### 2. Breaux will suffer no harm while Alliance seeks appellate review.

Breaux will not be injured by a delay while Alliance seeks appellate relief. In fact, Breaux would actually be assisted by immediate appellate clarity in determining the correct legal standard at issue in this matter, as the harm would be devastating to Breaux and his attorneys if a collective action was reversed by appellate review after a final judgment is rendered in this matter following a considerable additional effort that must be expended in a collective action case versus one asserted on behalf of an individual plaintiff, like Breaux. Moreover, all parties will benefit from a clarification at this stage, where many employees have begun to opt in to the suit, that the collective action cannot proceed absent a demonstration that the similarly situated analysis was conducted.

### 3. The public interest supports granting a stay of the Collective Action Order.

Finally, the public interest supports granting a stay of the Collective Action Order so that the public can be notified of the correct legal standard for determining similarly situated employees in the FLSA context. The public, including many employers, face difficulty in understanding the legal standard articulated in *Swales* as well as what kind of showing is required to establish whether employees are similarly situated.[17] In fact, this Court did not address *how* a district court should

---

[17] *See Swales*, 985 F.3d at 434–35 ("Section 216(b) of the FLSA is a catch-all provision titled "Damages; right of action; attorney's fees and costs; termination of right of action." The middle of the provision states

identify, at the outset of the case, what legal considerations will be material to determining whether a group of employees is similarly situated.[18] Notably, other circuits have opined more conclusively on what a plaintiff must establish before sending notice to putative class members, namely that those employees *performed the same tasks* and were subject to the same policies as other employees.[19] It is Alliance's position that the Court's guidance in *Adams v. All Coast* fills in that gap, requiring Plaintiff to show, by a preponderance of the evidence, that the work he performed as a cook was similar to that performed by a Captain before a collective class encompassing both jobs could be certified. Therefore, the public interest lies in granting a stay so that this Court can clarify the legal considerations at play in collective action certification, for both employees and employers alike who are subject to the FLSA's requirements.

## CONCLUSION

The requirements for issuing a stay are met here. Accordingly, this Court should stay the proceedings of the district court in order to review whether the

---

that employees may proceed collectively when they are "similarly situated." That's it. The statute doesn't define "similarly situated." (cleaned up)).

[18] *Id.* at 441.

[19] *See Clark v. A&L Homecare and Training Ctr., LLC*, 68 F.4th 1003, 1011 (6th Cir. 2023) ("Whether other employees are similarly situated for the purpose of joining an FLSA suit typically depends on whether they performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs were."); *see also Richard v. Eli Lilly & Co.*, 149 F.4th 901, 911 (7th Cir. 2025).

district court complied with this Court's precedent concerning the similarly situated analysis that all courts must undertake in certifying a collective action, which requires a specific showing that the employees performed the same type of work and were subject to the same policies.

Respectfully submitted,

**PHELPS DUNBAR LLP**

By: _____

David M. Korn (Bar #21676)
Rebecca Sha (Bar #35317)
Stephanie M. Poucher (Bar #37263)
Brendan J. Besh (Bar #40280)
**PHELPS DUNBAR LLP**
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504 566 1311
Facsimile: 504 568 9130
Email:     kornd@phelps.com
           rebecca.sha@phelps.com
           stephanie.poucher@phelps.com
           brendan.besh@phelps.com

**ATTORNEYS FOR DEFENDANT-PETITIONER, ALLIANCE LIFTBOATS, LLC**

- 13 -

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was filed on this 24th day of February, 2026, with the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system, which will send a notice of electronic filing to all participating counsel of record at the following email addresses:

Harry E. Morse, harry@bohmanmorse.com
Martin S. Bohman, martin@bohmanmorse.com
**BOHMAN MORSE, LLC**

Cayce C. Peterson, cayce@jjclaw.com
Jeffrey P. Green, jeff@jjclaw.com
**JJC LAW LLC**

Michael A. Mahone, Jr., mike@mahonefirm.com
**THE MAHONE FIRM LLC**

Thomas M. Flanagan, tflanagan@flanaganpartners.com
Anders F. Holmgren, aholmgren@flanaganpartners.com
**FLANAGAN PARTNERS LLP**

　　　　　　　　　　　　　　　　　　Rebecca Sha

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND <u>TYPE STYLE REQUIREMENTS</u>

1.    This brief complies with the type-volume limitation of Fed R. App. P. 27(d)(2) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), it contains 2,889 words.

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally-spaced typeface, including serifs, using Word, in Times New Roman 14-point font, except for the footnotes, which are in proportionally-spaced typeface, including serifs, using Word in Times New Roman 12-point font.

                                                                       Rebecca Sha

Dated: February 24, 2026