NO. 26-30091

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

*IN RE* ALLIANCE LIFTBOATS

PETITION FOR WRIT OF MANDAMUS FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA, HON. SUSIE MORGAN, CIVIL ACTION 2:24-CV-01000

OPPOSITION TO ALLIANCE LIFTBOAT'S MOTION TO STAY FILED ON BEHALF OF PATRICK BREAUX AND THOSE SIMILIARY SITUATED

Harry E. Morse (La. Bar 31515)
Martin S. Bohman (La. Bar 22005)
BOHMAN MORSE, LLC
400 Poydras St., Suite 2050
New Orleans, LA 70130
Telephone: (504) 930-4009
Facsimile: (888) 217-2744
Harry@BohmanMorse.com
Martin@BohmanMorse.com

Thomas M. Flanagan (La. Bar 19569)
Anders F. Holmgren (La. Bar 34597)
FLANAGAN PARTNERS LLP
201 St. Charles Ave., Ste. 3300
New Orleans, LA 70170
Telephone: (504) 569-0235
Facsimile: (504) 592-0251
tflanagan@flanaganpartners.com
aholmgren@flanaganpartners.com

Cayce C. Peterson (La. Bar 32217)
Jeffrey P. Green (La. Bar 30531)
JJC LAW LLC, 111 Veterans Memorial Blvd., Heritage Plaza, Suite 810
Metairie, LA 70005
Telephone: (504) 513-8820
Facsimile: (504) 513-8824
cayce@jjclaw.com
jeff@jjclaw.com

**Certificate of interested parties**

Counsel certifies pursuant to 5TH CIR. R. 28.2.1 that the following listed people and entities have an interest in the outcome of this case. These representations are made so the judges of this Court may evaluate possible disqualification or recusal:

1. Patrick Breaux, plaintiff-respondent
2. Murray Dorsey, Plaintiff-respondent
3. Matthew Sims, Plaintiff-respondent
4. Bobby Bergeron, Plaintiff-respondent
5. Regan Bourque, Plaintiff-respondent
6. Paul Brady, Plaintiff-respondent
7. Phillip Coles, Plaintiff-respondent
8. Marcus Jeansonne, Plaintiff-respondent
9. Leonard Jonson, Plaintiff-respondent
10. Kharon Marion, Plaintiff-respondent
11. Jakobee Matthews, Plaintiff-respondent
12. Renwick McPherson, Plaintiff-respondent
13. Dorian Morgan, Plaintiff-respondent
14. Xavier Pitts, Plaintiff-respondent
15. Jeffrey Powell, Plaintiff-respondent
16. Dustin Sellers, Plaintiff-respondent
17. Robert Staples, Plaintiff-respondent
18. Howard Wilson, Plaintiff-respondent
19. Benjamin Wright, Plaintiff-respondent
20. James Stevenson, Plaintiff-respondent
21. Francisco Coates, Plaintiff-respondent
22. Jeremy Towner, Plaintiff-respondent
23. Orlando Davis, Plaintiff-respondent
24. Stanley Harris, Plaintiff-respondent
25. Jakhiri Rogers, Plaintiff-respondent
26. Vasily Tsys, Plaintiff-respondent
27. Irving Guerrero, Plaintiff-respondent

28. Counsel for plaintiff-respondents:

Harry E. Morse
Martin S. Bohman
**BOHMAN MORSE, LLC**
400 Poydras St., Suite 2050
New Orleans, LA 70130

Cayce C. Peterson
Jeffrey P. Green
**JJC LAW LLC**
111 Veterans Memorial Blvd.
Heritage Plaza, Suite 810
Metairie, LA 70005

Michael A. Mahone, Jr.
**THE MAHONE FIRM LLC**
5190 Canal Blvd, Suite 102
New Orleans, LA 70124

Thomas M. Flanagan
Anders F. Holmgren
**FLANAGAN PARTNERS LLP**
201 St. Charles Ave., Ste. 3300
New Orleans, LA 70170

29. Alliance Liftboats, LLC, defendant-petitioner
30. Helix Energy Solutions Group, Inc.

31. Counsel for defendant-appellant:

David M. Korn
Rebecca Sha
Stephanie M. Poucher
Brendan J. Besh
**PHELPS DUNBAR LLP**
365 Canal St., Suite 2000
New Orleans, LA 70130

/s/Harry Morse
This 25th day of February, 2026

iii

## Opposition to Motion to Stay Pending Review

The scope of a collective action is within the district court's litigation-management discretion. *Swales v. KLLM Transport Serv's, LLC*, 985 F. 3d 430, 443 (5th Cir. 2021). After Alliance confirmed to the district court that it treats all its crewmembers as exempt seamen, in express contravention of the FLSA (see *Adams v. All Coast, LLC*, 15 F.3th 365 (5th Cir. 2021); see also *Walling v. W.D. Haden Co.*, 153 F.2d 196, 199 (5th Cir. 1946)), the district court, within its broad discretion, ruled that those similarly situated to Mr. Breaux are those subject to the same policy: all Alliance crewmembers on liftboats. Unhappy with the district court's ruling, Alliance has sought appellate review three times. Now, after notice has been sent and claimants are opting in, Alliance, in its third appeal, asks this Court to stay the district court. To show that Alliance's motion to stay is too late to be effective, and that far from the required showing of a probability of success, Alliance's petition for mandamus will not succeed, beginning with the timeline is worthwhile.

On October 6, 2025, after discovery, briefing, oral argument, supplemental briefing, and supplemental oral argument, the district court granted plaintiff's motion to certify a collective action and denied Alliance's motion for summary judgment. On November 3, Mr. Breaux submitted his proposed FLSA notice, consistent with the district court's October 6, 2025 order.

1

Then on November 4, twenty-nine days after the district court's order, Alliance filed a notice of appeal under 28 U.S.C. 1292(a)(3). Mr. Breaux moved to dismiss and on December 18, 2025, in one sentence, this Court dismissed Alliance's improper appeal for want of appellate jurisdiction. Mr. Breaux re-submitted his proposed FLSA notice on January 9: one day after this Court's mandate issued.

Following this Court's December 18 Order, Alliance stood still. It was not until January 13, 2026 that it sought to appeal again in the district court under Fed. R. App. P. 5(a)(3), and asked the district court again to stay proceedings. However, Alliance made the decision not to ask the district for expedited hearing and the notices were sent out, as approved by the district court, at the end of January. The district court thereafter denied Alliance's motion for interlocutory appeal on February 12, 2026, and denied Alliance's motion to stay as moot.

Twenty-four crewmembers have since joined the collective action, along with Mr. Breaux and two others who had joined toward inception of the suit. At the time of this filing, there are twenty-seven claimants. Only now, Alliance asks this Court for a stay, arguing for relief to "ensur[e] no steps are taken that would be totally and catastrophically undone by appellate review at the end of this litigation."

Alliance's motion to stay should be denied for two principal reasons. First, Alliance's delay has mooted the issue in profound part: notices have already been sent and Alliance employees are already joining the collective action. That is not the

fault of Mr. Breaux, and it is not the fault of the district court. It is the direct result of Alliance's delay and its strategic decision not to seek mandamus and a stay until well after its two prior failed appeals.

Second, Alliance's petition for mandamus will not succeed, and a stay will only have the effect of further delaying the inevitable. Discussed briefly below, the district court's conclusion is correct on the merits: those similarly situated to Mr. Breaux are those crewmembers subject to the same policy. More relevant though, this Court has spoken to the district court's authority to certify a collective action: "The bottom line is that the district court has broad, litigation-management discretion here." *Swales v. KLLM Transport Serv's, LLC*, 985 F. 3d 430, 443 (5th Cir. 2021). Alliance may be unhappy with the district court's conclusion, but the bottom line is that the district court acted within that litigation-management discretion. There is no serious legal question, and Alliance will not succeed on the merits.

1. **Alliance cannot show irreparable harm.**

Alliance acknowledges that notice has already been sent, so it argues first that it will suffer irreparable harm because it would have to participate in more discovery. "Issuing discovery to each of these opt-in parties will be burdensome and would increase the time and expense needed to defend against individual complaints." Continuing, Alliance identifies the harm as "notice being provided to employees

ineligible to participate in the collective action as well as the cost and expense of defending against those ineligible claims." Brief at 9.

As to Alliance's claim over irreparable harm because notice would be provided to employees, that ship has sailed. Notice has been sent. Employees have signed up. That is not because Mr. Breaux jumped the gun, it is because Alliance has brought this petition for mandamus after the notices were sent, despite every opportunity to petition this Court for mandamus when it could have been timely (albeit as futile as it is now).

Though Mr. Breaux questions how much work is really involved in issuing discovery to n+1 claimants,[1] the bigger issue for Alliance is that this Court has rejected the argument that litigation expense is irreparable harm. *Weingarten Realty Investors v. Miller*, 661 F.3d 904, 913 (5th Cir. 2011); see also *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1 (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.")

Alliance cannot show and does not argue that there is irreparable harm because notices may be sent. After all, notices have been sent. Alliance's argument for irreparable harm on the basis of litigation expense is legally inadequate. Alliance cannot show irreparable harm.

---

[1] Mr. Breaux can point to no better evidence of Alliance's willingness to put in the hard work to litigate than Alliance's voluminous pleadings in front of this Court and the district court.

4

This holding is consistent with mandamus petitions in FLSA cases. In *In re JPMorgan Chase & Co.*, 916 F.3d 494 (5th Cir. 2019), this Court held that orders facilitating notice to potential opt-in plaintiffs could meet the mandamus requirements, but it so held because the issue would be moot after notice is sent. There, the plaintiffs had signed arbitration agreements, and the FLSA collective action would have functionally ignored them. Once the notices were sent, there was no going back. Chase cleared the high mandamus bar with regard to timeliness: this Court held that "Chase has shown that the issue presented is irremediable on ordinary appeal."[2] The opposite is true here: because Alliance waited until after notices have been sent to file its motion, Alliance cannot now show irreparable harm.

2. **Alliance has no material chance on the merits.**

   a. The standard for a stay

In addition to falling well short of the mandamus requirement with regard to irreparable harm, Alliance falls well short substantively. For Alliance to show it is entitled to a stay, it must show a likelihood of success on the merits. *Arnold v. Garlock*, 278 F.3d 426, 438 (5th Cir. 2001). To show a likelihood of success on the merits, Alliance must show that this Court will probably grant mandamus. Alliance must, therefore, not only show that the district court erred, it must show that the error

---

[2] Chase did not clear it substantively. This Court held: "In spite of our holding that the district court erred in ordering notice to Arbitration Employees, the court did not 'clearly and indisputably' err, as is required for a writ of mandamus."

was so substantial as to amount to a usurpation of judicial power, or a "clear abuse of discretion that produces patently erroneous results." *JP Morgan Chase*, 916 F.3d at 504.

Alliance cannot make that showing because the district court's application of the facts to the law here was absolutely correct and consistent with the case law. If the district court were wrong in the abstract, Alliance then faces a double burden: first, the district court's decision under *Swales* is within its litigation-management discretion, so the district court's judgment must have abused that discretion. Second, the district court must not have just abused that discretion, it must have so egregiously abused its discretion to amount to a usurpation of judicial power. *Id.* at 499 (quoting *Cheney*, 542 U.S. at 380). Alliance must also show that "the issues implicated have importance beyond the immediate case." *Id.* (cleaned up). This Court also considers "such factors as the need for judicial neutrality and the avoidance of rulings that unnecessarily stimulate litigation." *In re Spiros Partners, Ltd.*, 816 F. App'x 985, 987 (5th Cir. 2020) (per curiam).

    b.  <u>The district court correctly defined the collective action.</u>

Mr. Breaux will begin by showing that the district court was right. Before the district court, Alliance argued strenuously and at length that no one was similarly situated to Mr. Breaux. Alliance continues the argument to this Court, arguing that the factual differences between different crewmembers compels a conclusion that

they are dissimilarly situated, arguing at length that because cooks cook and crane operators operate cranes, it is impossible that they could be similarly situated, citing *Adams*.

The crewmembers on Alliance liftboats are similarly situated to Mr. Breaux because Alliance treated them all as FLSA-exempt seamen, despite this Court's holding in *Walling v. W.D. Haden Co.*, 153 F.2d 196 (5th Cir. 1946) that crewmembers working on dredges are nonexempt – not some of them, all of them, because "[t]he dominant employment is clearly the industrial one, the production of shells. The maritime work is incidental and occasional, taking but a small fraction of the work time." More recently, in *Adams v. All Coast, LLC*, 15 F.4th 365 (5th Cir. 2021), this Court followed *Walling*, holding that work that was "necessary to the operation of the liftboats as boats" counted as FLSA-exempt seaman time, but all other was FLSA-nonexempt. This Court expressly held that the time spent supporting rig operations was not seaman time. *Id*. at 374, citing *Walling*, and citing *Dole v. Petroleum Treaters, Inc.*, 876 F.2d 518 (5th Cir. 1989) (*Dole* held that seamen who move barges to wells, then maintain the wells from the barge, are FLSA-nonexempt). Only those services "that were necessary for the operation as liftboats as boats" count as FLSA-nonexempt. *Adams*, 15 F.4th at 375.

7

      c. "Similarly situated" under the FLSA means subject to the same policy.

In so holding, the district court followed the consensus of appellate courts that a group is "similarly situated" when it is subject to the same misguided FLSA policy. This Court, when offered the chance to define "similarly situated," demurred. *Mooney v. Aramco Serv's Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995). In *Swales*, this Court outlined how district courts should go about making the determination, but not which standard they should use. In *Adams*, this Court did not address who is similarly situated: it ruled on the merits that only the time crewmembers on liftboats spend contributing to the navigational function of the vessel are nonexempt. Though this Court has not elaborated on the standard for "similarly situated," multiple courts have, and the consistent answer is employees are similarly situated when they fall under the same policy, as do all the liftboat crewmembers here.

The Sixth Circuit held that "[e]mployees who suffer from a single, FLSA-violating policy or whose claims are unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct, are similarly situated." *Monroe v. FTS USA, LLC*, 860 F.3d 389, 397-98 (6th Cir. 2017) (cleaned up). The Sixth Circuit looked at a nonexclusive multi-factor text, including (1) the factual and employment settings of the individual plaintiffs; (2) the different defenses to which the plaintiffs may be subject on an individual basis; and (3) the degree of fairness and procedural impact of certifying

8

the action as a collective action." *Id.* at 398, citing *O'Brien v. Ed Donnely Enter's, Inc.*, 575 F.3d 567, 584 (6th Cir. 2009); 7B Wright, Miller & Kane, Federal Practice and Procedure § 1807 at 487 n.65 (3d ed. 2005).

In *Richards v. Eli Lilly & Co.*, 149 F.4th 901, 913 (7th Cir. 2025), the Seventh Circuit held the same: for claims to be similarly situated, the named plaintiff must show that he and the members of the proposed collective "are victims of a common unlawful employment practice or policy."

The Second Circuit is much broader: in *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 516 (2d Cir. 2020), it held that "'similarly situated' means that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation."[3] It held "[w]e conclude by noting that the FLSA not only imposes a lower bar than Rule 23, it imposes a bar lower in some sense even than Rules 20 and 42, which set forth the relatively loose requirements for permissive joinder and consolidation at trial." *Id.* at 520 (cleaned up).

  d. <u>The district court correctly applied the standard to the facts.</u>

With a survey of the standard, we can look at the facts. The district court observed that Alliance paid all its crewmembers a day rate, even though they spent the profound majority of their time on a liftboat that was jacked at its customers'

---

[3] The Ninth and Third Circuits follow the Second Circuit. See *Campbell v. City of Los Angeles,* 903 F.3d 1090, 1114 (9th Cir. 2018); *Halle v. W. Penn Allegheny Health Sys. Inc.,* 842 F.3d 215, 226 (3d Cir. 2016).

9

platforms.⁴ Alliance did not have one policy for cooks, another for crane operators, a third for able-bodied seamen, and a fourth for mates – it had no written policy at all. The employees were similarly situated because they were all subject to the same misguided policy. Though job duties differed, the thrust of their work when they were aboard liftboats jacked next to the platform was to support the industrial work happening on the rig.

The district court patiently examined the records and listened to argument before making its determination. It was stymied in some part, though, by the absence of records: Alliance produced no records showing any overtime policy, and Alliance did not track when its employees worked or what its employees did. The district court reasonably concluded that the vessel logs – the only records of what the vessels did and when – "should prove useful in the analysis of whether the employees were FLSA seamen, particularly when Defendant kept no records that show what work was being done by which employee at what time." It reasoned that "certainly, Defendant's lack of record keeping is not held against Plaintiff."⁵

e. <u>The district court acted within its broad discretion.</u>

The district court could have reasonably come out a different direction and held, say, that the class was more limited. Mr. Breaux may grouse, but he probably

---

⁴ Order and Reasons dated October 6, 2025, p. 12 – 13.
⁵ Order and Reasons dated October 6, 2025, p. 14.

could not reasonably turn the issue into a federal appeal after trial. After all, the district court would have acted within its broad, litigation-management authority.

And that's on an ordinary appeal on the merits. For mandamus, Alliance must not just show that the district court abused its discretion, it must show that the abuse was so severe as to be a usurpation, and that the issues implicated have importance beyond the immediate case. *In re Am. Lebanese Syrian Associated Charities, Inc.*, 815 F.3d 204, 206 (5th Cir. 2016). Mr. Breaux will not belabor the point: the district court's decision was correct. Correctness is not the standard for collective action certification though, it is discretionary, and the district court acted within its discretion. Not even abuse of discretion is the standard for mandamus – the standard is, functionally, egregious abuse of discretion. To the extent anyone might quibble with the district court's decision, that quibbling does not approach the mandamus standard. Alliance's suggestion that the district court so widely fell off the mark that the district court's exercise of its wide discretion constitutes a usurpation is to do real injury to the meaning of the words.

### 3. Conclusion

For the foregoing reasons, Alliance's motion to stay comes too late; it is not based on a showing of irreparable harm; and Alliance not only cannot show a probability of success on the merits, Alliance has no material chance on the merits. This Court should deny Alliance's motion.

Respectfully Submitted,

/s/Harry Morse
Harry E. Morse
Martin S. Bohman
**BOHMAN MORSE, LLC**
400 Poydras St., Suite 2050
New Orleans, LA 70130
Attorneys for plaintiff-respondents

## CERTIFICATE OF SERVICE

Plaintiff-respondents certify that a copy of the foregoing was filed on the 25th day of February, 2026, with the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system, which will send a notice of electronic filing to all participating counsel of record.

/s/Harry Morse

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed R. App. P. 27(d)(2) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), it contains 2,712 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Word version 2601, in Times New Roman 14-point font.

Dated: February 25, 2026

/s/Harry Morse