NO. 26-30091

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

*IN RE* ALLIANCE LIFTBOATS, L.L.C

PETITION FOR WRIT OF MANDAMUS FROM THE UNITED STATES
DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA,
HON. SUSIE MORGAN, CIVIL ACTION 2:24-CV-01000

OPPOSITION TO ALLIANCE LIFTBOAT'S PETITION FOR
MANDAMUS
FILED ON BEHALF OF PATRICK BREAUX AND
THOSE SIMILARLY SITUATED

Harry E. Morse (La. Bar 31515)
Martin S. Bohman (La. Bar 22005)
BOHMAN MORSE, LLC
400 Poydras St., Suite 2050
New Orleans, LA 70130
Telephone: (504) 930-4009
Facsimile: (888) 217-2744
Harry@BohmanMorse.com
Martin@BohmanMorse.com

Thomas M. Flanagan (La. Bar 19569)
Anders F. Holmgren (La. Bar 34597)
FLANAGAN PARTNERS LLP
201 St. Charles Ave., Ste. 3300
New Orleans, LA 70170
Telephone: (504) 569-0235
Facsimile: (504) 592-0251
tflanagan@flanaganpartners.com
aholmgren@flanaganpartners.com

Cayce C. Peterson (La. Bar 32217)
Jeffrey P. Green (La. Bar 30531)
JJC LAW LLC, 111 Veterans Memorial Blvd., Heritage Plaza, Suite 810
Metairie, LA 70005
Telephone: (504) 513-8820
Facsimile: (504) 513-8824
cayce@jjclaw.com
jeff@jjclaw.com

## Certificate of interested parties

Counsel certifies pursuant to 5TH CIR. R. 28.2.1 that the following listed people and entities have an interest in the outcome of this case. These representations are made so the judges of this Court may evaluate possible disqualification or recusal:

1. Patrick Breaux, plaintiff-respondent
2. Murray Dorsey, Plaintiff-respondent
3. Matthew Sims, Plaintiff-respondent
4. Bobby Bergeron, Plaintiff-respondent
5. Regan Bourque, Plaintiff-respondent
6. Paul Brady, Plaintiff-respondent
7. Phillip Coles, Plaintiff-respondent
8. Marcus Jeansonne, Plaintiff-respondent
9. Leonard Jonson, Plaintiff-respondent
10. Kharon Marion, Plaintiff-respondent
11. Jakobee Matthews, Plaintiff-respondent
12. Renwick McPherson, Plaintiff-respondent
13. Dorian Morgan, Plaintiff-respondent
14. Xavier Pitts, Plaintiff-respondent
15. Jeffrey Powell, Plaintiff-respondent
16. Dustin Sellers, Plaintiff-respondent
17. Robert Staples, Plaintiff-respondent
18. Howard Wilson, Plaintiff-respondent
19. Benjamin Wright, Plaintiff-respondent
20. James Stevenson, Plaintiff-respondent
21. Francisco Coates, Plaintiff-respondent
22. Jeremy Towner, Plaintiff-respondent
23. Orlando Davis, Plaintiff-respondent
24. Stanley Harris, Plaintiff-respondent
25. Jakhiri Rogers, Plaintiff-respondent
26. Vasily Tsys, Plaintiff-respondent
27. Irving Guerrero, Plaintiff-respondent
28. Trent Allen, Plaintiff-respondent

29. Counsel for plaintiff-respondents:

Harry E. Morse
Martin S. Bohman
**BOHMAN MORSE, LLC**
400 Poydras St., Suite 2050
New Orleans, LA 70130

Cayce C. Peterson
Jeffrey P. Green
**JJC LAW LLC**
111 Veterans Memorial Blvd., Ste. 810
Metairie, LA 70005

Michael A. Mahone, Jr.
**THE MAHONE FIRM LLC**
5190 Canal Blvd, Suite 102
New Orleans, LA 70124

Thomas M. Flanagan
Anders F. Holmgren
**FLANAGAN PARTNERS LLP**
201 St. Charles Ave., Ste. 3300
New Orleans, LA 70170

30. Alliance Liftboats, LLC, defendant-petitioner

31. Helix Energy Solutions Group, Inc.

32. Counsel for defendant-appellant:

David M. Korn
Rebecca Sha
Stephanie M. Poucher
Brendan J. Besh
**PHELPS DUNBAR LLP**
365 Canal St., Suite 2000
New Orleans, LA 70130

<u>/s/Harry Morse</u>
So certified this 25th day of February, 2026

# TABLE OF CONTENTS

**Contents**………………………………………………………………**Pages**

Certificate of Interested Persons ............................................................. ii

Table of Contents ....................................................................................iv

Table of Authorities ................................................................................. v

Opposition to Petition for Mandamus.......................................................1

   1.  The district court plainly acted within its discretion, and
      Alliance's petition should fail............................................................3

      a.  Mandamus requires a showing of judicial usurpation of power ...............3

      b.  The district court followed *Swales* to the letter ...........................................4

      c.  The district court followed the law in certifying a collective action..........6

      d.  The district court's conclusion that all the crewmembers
         are similarly situated is compelled by FLSA case law.............................8

      e.  Alliance would blame Mr. Breaux for Alliance's
         failure to keep records ...........................................................................12

      f.  *Adams* does not set the standard for "similarly situated.".......................18

   2.  None of this gets close to the standard for mandamus .................................20

   3.  Alliance cannot show irreparable harm ........................................................23

   4.  Conclusion ....................................................................................................24

Certificate of Service ...........................................................................25

Certificate of Compliance ....................................................................25

# TABLE OF AUTHORITIES

**Cases**……………………………………………………………………**Pages**

*Adams v. All Coast, LLC*
 15 F.4th 365 (5th Cir. 2021) .................................................................*passim*

*Anderson v. Mt. Clemens Pottery Co.*
 328 U.S. 680 (1946) ....................................................................................13

*Campbell v. City of Los Angeles*
 903 F.3d 1090 (9th Cir. 2018) ....................................................................10

*Cheney v. U.S. Dist. Court*
 542 U.S. 367 (2004) .......................................................................................1

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*
 467 U.S. 837 (1984) .......................................................................................7

*Clarke v. Pei Wei Asian Dinner LLC*
 No. 20-800, 2023 WL 2518805 (N.D. Tex. Mar. 13, 2023) ........................17

*Halle v. W. Penn Allegheny Health Sys. Inc.*
 842 F.3d 215 (3d Cir. 2016) ..................................................................10, 22

*Hamm v. Acadia Healthcare Co., Inc.*
 No. 20-1515, 2021 WL 5749900 (E.D. La. Oct. 19, 2021) .........................11

*In re Depuy Orthopaedics, Inc.*
 870 F.3d 345 (5th Cir. 2017) .......................................................... 1, 3, 23-24

*In re DeSoto County, Mississippi*
 No. 26-60020 (5th Cir. Jan. 20, 2026) ........................................................24

*In re JP Morgan Chase & Co.*
 916 F.3d 494 (5th Cir. 2019) .............................................................1, 4, 23

*Loper Bright Enter's v. Raimondo*
 603 U.S. 369 (2024) .......................................................................................7

*Loy v. Rehab Synergies, LLC*
      71 F.4th 338 (5th Cir. 2023) ........................................................ 3, 10-11, 22

*Martin v. Bedell*
      955 F.2d 1029 (5th Cir. 1992) ....................................................... 19

*Monroe v. FTS USA, LLC*
      860 F.3d 389 (6th Cir. 2017) ....................................................... 9, 22

*Mooney v. Aramco Serv's Co.*
      54 F.3d 1207 (5th Cir. 1995) ......................................................... 8

*O'Brien v. Ed Donnely Enter's, Inc.*
      575 F.3d 567 (6th Cir. 2009) ....................................................... 9, 22

*Reich v. Southern New Engeland Telecom.*
      121 F.3d 58 (2d Cir. 1997) .......................................................... 13

*Richards v. Eli Lilly & Co.*
      149 F.4th 901 (7th Cir. 2025) ...................................................... 4, 9, 22

*Scott v. Chipotle Mexican Grill, Inc.*
      954 F.3d 502 (2d Cir. 2020) ....................................................... 10, 22

*Spillers v. Louisiana PHS, LLC*
      2022 WL 1675950 (W.D. La. May 10, 2022) ..................................... 11, 12

*Swales v. KLLM Transport Serv's, LLC*
      985 F. 3d 430 (5th Cir. 2021) ...............................................*passim*

*Torres v. Chambers Protective Servs., Inc.*
      No. 5:20-CV-212-H, 2021 WL 3419705 (N.D. Tex. Aug. 5, 2021) ............. 11

*Trottier v. FieldCore Servs. Sols., LLC*
      No. 20-0186, 2022 WL 658765 (N.D. Tex. Mar. 4, 2022) ...................... 11

*United States v. Denson*
      603 F.2d 1143 (5th Cir. 1979) ....................................................... 4

*Will v. United States*
    389 U.S. 90 (1967) ...........................................................................3

**Statutes and Treatises**……………………………………………**Pages**

29 C.F.R. § 783.31-37 ......................................................................2

7B Wright, Miller & Kane, Federal Practice and Procedure § 1807
    (3d ed. 2005)...............................................................................9

## Opposition to Petition for Mandamus

A writ of mandamus is one of the most potent weapons in the judicial arsenal, and it is to be used sparingly. Mandamus is a "drastic and extraordinary remedy reserved for really extraordinary cases." *In re JP Morgan Chase & Co.*, 916 F.3d 494, 499 (5th Cir. 2019) (citing *In re Depuy Orthopaedics, Inc.,* 870 F.3d 345, 350 (5th Cir. 2017)). As such, mandamus may be issued only upon the meeting of three conditions: First, the petitioner must have no other adequate means to attain the relief he desires.  Second, this Court must be satisfied that the writ is appropriate under the circumstances. Third, the petitioner must demonstrate a clear and indisputable right to the writ. *Id.* (citing *Cheney v. U.S. Dist. Court,* 542 U.S. 367, 380 (2004)). Alliance does not meet the standard.

Here, the district court's purportedly egregious error was defining the collective action as all Alliance liftboat employees, a group of 166 people, because they all were subject to the same policy. Alliance treated them all as FLSA-exempt, even though (1) this Court held in *Walling v. W.D. Haden Co*., 153 F.2d 196, 199 (5th Cir. 1946) that industrial work performed from vessels is not exempt, and (2) this Court held in *Adams v. All Coast, LLC,* 15 F.4th 365 (5th Cir. 2021)—with regard to liftboats specifically—that only that work contributing to the navigation of the vessel is FLSA-exempt. Unless the employee spends about 80% of his time

1

contributing to the navigation of the vessel, he is entitled to overtime. 29 C.F.R. § 783.31-37.

Mr. Breaux established that Alliance liftboats do not spend very much time in navigation, and it follows that very little of the crewmembers' work furthers the navigational purpose of the vessel. Instead, around 70% of the time, the vessel log – the only record of who does what and when on the vessel – shows the Alliance liftboats are stationary work platforms, working as directed by their customer.

Alliance admitted that it kept no records, other than the vessel logs, of what its employees did. And Alliance admitted that it treated its employees, as a matter of policy, as FLSA exempt under the seaman exception, never mind *Walling* and *Adams*. The district court refused to hold Alliance's poor record-keeping against Mr. Breaux, and certified a collective action of everyone subject to the same policy: the crewmembers on the liftboats.

There are two principal reasons why Alliance's petition should fail. First, Alliance waited too long. The notices have already gone out, and many Alliance employees have already joined the suit. At this juncture, the only path forward for Alliance is an appeal on the merits, not an extraordinary writ. Second, Alliance is wrong on the merits. The district court followed the profound weight of case law in this Circuit and nationwide. "Similarly situated" is principally a question of whether employees have factual overlay that will benefit from collective trial, focusing on

2

whether the employees are subject to the same policy. Alliance's proposed alternative, looking granularly at the job duties without regard to the overarching policy, would be a marked departure from the ordinary multi-factor test used nationwide to no apparent end. Instead, the case law, including this Court's decision in *Loy v. Rehab Synergies, LLC*, 71 F.4th 338 (5th Cir. 2023), holds that employees who are subject to the same policy are similarly situated.

To the extent Alliance might disagree, the standard of review is insurmountable: the scope of a collective action is within the district court's litigation-management discretion. *Swales v. KLLM Transport Serv's, LLC*, 985 F. 3d 430, 443 (5th Cir. 2021). Any error Alliance might point to does not approach the high standard for abuse of discretion, much less the standard for seeking a petition for mandamus on an abuse-of-discretion matter. Mr. Breaux will address these issues in reverse order.

## 1. The district court plainly acted within its discretion, and Alliance's petition should fail.

### a. Mandamus requires a showing of judicial usurpation of power.

For Alliance to show it is entitled to mandamus, it "requires more than showing that the court misinterpreted the law, misapplied it to the facts or otherwise engaged in an abuse of discretion." Where a matter is committed to a district court's discretion, this Court "review[s] only for clear abuses of discretion that produce patently erroneous results." *In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 350 (5th

3

Cir. 2017). Mandamus requires a judicial usurpation. *Will v. United States,* 389 U.S. 90, 95, (1967). Furthermore, mandamus relief may be appropriate only where an issue's importance extends beyond the immediate case. *Id.* at 352. Because the standard is a clear abuse of discretion, the merits of the claim must also be clear: "the writ will not issue to correct a duty that is to any degree debatable." *United States v. Denson*, 603 F.2d 1143, 1147 n.2 (5th Cir. 1979) (en banc).

> b.  The district court followed *Swales* to the letter.

The district court's decision on whether and how broadly to certify a collective action is within its litigation management discretion. This follows, as FLSA cases are necessarily factually different. *Swales*, for instance, involved a collective action of "potentially thousands," 985 F.3d at 439, and *In re JPMorgan Chase & Co.*, 916 F.3d 494, 498 (5th Cir. 2019) involved "about 42,000 current and former call-center employees." The factual differences necessitate different approaches. See *Richards v. Eli Lilly & Co.*, 149 F.4th 901, 914 (7th Cir. 2025) ("The watchword here is flexibility[.]")

*Swales*, therefore, outlined a process instead of predetermining an answer. This Court explained in *Swales* that the first step is for the district court to "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of employees is similarly situated," and then to authorize discovery accordingly. This Court further held that "[t]he amount of

discovery necessary to make that determination will vary case by case, but the initial determination must be made, and as early as possible." *Swales*, 985 F.3d at 441.

The district court did that here. The district court solicited correspondence to determine the scope of discovery. Plaintiff asked for primarily written discovery, including vessel logs, "individual payroll/income records for the Alliance employees, job descriptions, daily work logs, and other similar documentation [of] what Alliance employees assigned to Alliance liftboats were doing when and what the status of the vessels was at during those times, over the course the relevant [four year] period."[1]

Alliance objected, arguing that this discovery request was "impermissibly broad," and that the discovery plan should be limited not just to "whether Plaintiff is similarly situated to 'cook[s] aboard the L/B MIAMI," who were paid like Mr. Breaux and who, like Mr. Breaux, cooked meals for crewmembers and passengers and were subject to the same payment provisions.[2] The district court followed *Swales* and found that "a broad scope of discovery at this stage of litigation" furthered *Swales*. The district court thus sided with the plaintiff, holding that it "will adopt Plaintiff's proposed discovery plan."[3]

---

[1] Exhibit 1 is the district court's Order and Reasons, Rec. Doc. 13, September 5, 2024. The cite is at p. 2.
[2] Exhibit 1 at p. 2.
[3] Ex. 1 at p. 4.

Following that ruling, Mr. Breaux sent discovery to Alliance. Pet. Appx. 131. The discovery was just what Mr. Breaux had told the Court it would solicit: Alliance's pay records, its records of what its people did, its policies, and its records of what its liftboats did. Alliance, however, failed to respond in significant part: where Mr. Breaux asked for documents showing who was on the liftboats and what they did, Alliance objected on multiple grounds, including that "it is not relevant to the issue of whether Plaintiff, a cook who worked aboard the L/B MIAMI, qualifies as a seaman exempt from overtime," and second that the discovery is "overbroad in that it seeks documents related to Defendant's entire fleet and not the lift boat(s) on which Plaintiff performed work during the relevant period." Pet. Appx. 133. Where Mr. Breaux asked for vessel logs and person-on-board logs, the same objection followed. That is, after the district court sided with the plaintiff to allow broad discovery into who is similarly situated to Mr. Breaux, Alliance obfuscated and demurred.

    c.  <u>The district court followed the law in certifying a collective action.</u>

Still, despite Alliance's objections, the records that Mr. Breaux was able to obtain indisputably showed that liftboats spent the vast majority of their time not in navigation and not preparing for navigation. Alliance's records also showed Alliance did not have any actual overtime policy. Mr. Breaux moved for certification of a collective action. Alliance, for its part, moved for summary judgment, arguing that

the Supreme Court's decision in *Loper Bright Enter's v. Raimondo*, 603 U.S. 369 (2024), in undoing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), had also undone *Walling v. W.D. Haden Co.*, 153 F.2d 196 (5th Cir. 1946) and *Adams v. All Coast, LLC*, 15 F.4th 365 (5th Cir. 2021). The district court denied Alliance's motion.[4]

In response to Mr. Breaux's motion for certification, Alliance responded that certification was impossible: not only should there be no certification as to Alliance crewmembers on liftboats, there should be no certification as to cooks on liftboats, or even cooks on the L/B MIAMI. Pet. Appx. 48. Failing that, Alliance argued, certification "must be limited to those who served as cooks aboard the L/B MIAMI between April 19, 2024 and two years before the date on which her or his opt-in paperwork is filed." Pet. Appx. 48-49.

The district court heard argument and asked for supplemental briefing. Alliance again told the Court that certification was inappropriate: that because cooks spent time preparing food for crew sometimes, and for third parties other times, "this highly individualized inquiry precludes class certification." Pet. Appx. 153. Then, as a fallback, Alliance argued that "individual considerations should preclude" class certification, but if any class were to be certified, it should be "cooks aboard the L/B MIAMI, whose primary duties, like Breaux's, included cooking meals for

---

[4] The motion, the opposition, the reply, and the district court's ruling are attached as Exhibit 2.

crewmembers and passengers, and were subject to the same payment provisions." Pet. Appx. 154. Alliance stuck by that position even though the collective action *already* included two cooks who had worked on different vessels (Mr. Breaux and Mr. Murray Dorsey), and one ordinary seaman, Matthew Sims, whose responsibilities were much more varied. Pet. Appx. 45-46.

The district court, following a thorough review of the evidence, sided with the plaintiff. Pet. Appx. 1363-83. The district court noted that "Defendant failed to respond to Plaintiff's discovery requests seeking exactly this information but now argues Plaintiff has not produced sufficient evidence," Pet. Appx. 1375, and that "none of the differences between the job duties and work locations of the putative collective members in this case, all of whom work on liftboats and none of whom is paid overtime, diminish the evidence of the alleged unlawful practice." Pet. Appx. 1377. The district court certified a collective action of Alliance crewmembers on Alliance liftboats, all of whom were subject to the same policy: Alliance treated them all as exempt seamen.

> d.  The district court's conclusion that all the crewmembers are similarly situated is compelled by FLSA case law.

What it means for a group of plaintiffs to be similarly situated is the subject of a fairly narrow range of discussion. This Court has not defined the term, demurring in *Mooney v. Aramco Serv's Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995), but sister circuits have ranged from narrower in the Sixth and Seventh Circuits, to

broader in the Second, Third, and Ninth. Still, the touchstone is a non-exclusive, multi-factor test that focuses on whether employees are subject to the same policy. Those factors are (1) the factual and employment settings of the individual plaintiffs; (2) the different defenses to which the plaintiffs may be subject on an individual basis; and (3) the degree of fairness and procedural impact of certifying the action as a collective action. *Monroe v. FTS USA, LLC*, 860 F.3d 389, 397-98 (6th Cir. 2017), citing *O'Brien v. Ed Donnely Enter's, Inc.*, 575 F.3d 567, 584 (6th Cir. 2009); 7B Wright, Miller & Kane, Federal Practice and Procedure § 1807 at 487 n.65 (3d ed. 2005). The three factors are nonexclusive, and they apply beyond just the Sixth Circuit.

Within the factors, courts pay particular attention to whether employees are subject to the same policy. "Employees who suffer from a single, FLSA-violating policy or whose claims are unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct, are similarly situated." *Monroe*, 860 F.3d at 397-98 (cleaned up). The Seventh Circuit likewise held in *Richards v. Eli Lilly & Co.*, 149 F.4th 901, 913 (7th Cir. 2025) that for claims to be similarly situated, the named plaintiff must show that he and the members of the proposed collective "are victims of a common unlawful employment practice or policy."

The broader reading comes from the Second Circuit, which holds that "'similarly situated' means that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation,"[5] and that "the FLSA not only imposes a lower bar than Rule 23, it imposes a bar lower in some sense even than Rules 20 and 42, which set forth the relatively loose requirements for permissive joinder and consolidation at trial." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 520 (2d Cir. 2020).

Courts in this Circuit have tended toward the narrower interpretation espoused by the Sixth and Seventh Circuits. *Loy v. Rehab Synergies, LLC*, 71 F.4th 338 (5th Cir. 2023) is the lead case. It involved a potential class of about 1,000 people. The district court certified a collective action of all the employees who were subject to the same policy. Rehab Synergies fought it, but this Court agreed that the plaintiffs were similarly situated because they "were all subject to Rehab Synergies' unwritten policy or practice of off-the-clock work," and that "the evidence supported the conclusion that Plaintiffs were all subject to Rehab Synergies' practice or pattern of knowingly countenancing or expressly encouraging off-the-clock work." *Id.* at 338-39. It so held even though the plaintiffs worked in five different positions – speech

---

[5] The Ninth and Third Circuits follow the Second Circuit. See *Campbell v. City of Los Angeles,* 903 F.3d 1090, 1114 (9th Cir. 2018); *Halle v. W. Penn Allegheny Health Sys. Inc.,* 842 F.3d 215, 226 (3d Cir. 2016).

therapist; physical therapist, and occupational therapist among them – at 20 different facilities, and reported to 22 different directors. *Id.*

District courts throughout this Circuit agree. The lead cases include *Torres v. Chambers Protective Servs., Inc.,* No. 5:20-CV-212-H, 2021 WL 3419705, at *3 (N.D. Tex. Aug. 5, 2021) (employees had different supervisors, work on different teams, have some varying job duties, and work in different locations but were similarly situated); *Hamm v. Acadia Healthcare Co., Inc.,* Civ. Action No. 20-1515, 2021 WL 5749900, at *3 (E.D. La. Oct. 19, 2021) (Morgan, J.) ("The fact that members of the putative collective class work in different facilities or have different job titles does not preclude a finding that they are similarly situated."); *Trottier v. FieldCore Servs. Sols., LLC,* Civ. Action No. 20-0186, 2022 WL 658765, at *2 (N.D. Tex. Mar. 4, 2022) ("Similar situation is a demonstrated similarity among the individual situations . . . some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged policy or practice."); and *Spillers v. Louisiana PHS, LLC*, 2022 WL 1675950 (W.D. La. May 10, 2022) ("Courts have held that putative class members must show they were affected by a common policy, plan, pattern or practice to meet the similarly situated requirement.").

Alliance instead insists that the central inquiry is overlap in work: that "similarly situated employees undert[ake] work that was similar to that of plaintiff

11

Patrick Breaux's." Brief at p. 29. Alliance's focus is misplaced. Factual differences in employment matter, but policy matters more. Alliance treated all its employees on liftboats as FLSA exempt under the seaman exception. They were all under the same policy. Under the above case law, the district court's opinion was not just correct, it is inescapable.

     e.  <u>Alliance would blame Mr. Breaux for Alliance's failure to keep records.</u>

Against this deluge of precedent, Alliance cites no cases from this Circuit, or from out of circuit, that support Alliance's proposed standard. Instead, Alliance argues in part that Mr. Breaux failed to carry his burden, and in further part that this Court should cobble together portions of *Adams* and parts of *Swales* to create a new standard that relies more heavily on what people do, necessitating individual attention to individual claims and reading "similarly situated" out of the FLSA.

Shown above, Mr. Breaux was significantly hamstrung by Alliance's failure to respond to discovery, as the district court observed: "Defendant obfuscated rather than answer the discovery authorized by the Court for it to be able to determine whether the members are similarly situated. The Court interprets the Defendant's obfuscation as confirmation that it considered all liftboat employees to be FLSA-exempt seamen not entitled to overtime." Pet. App. 1375. "Certainly," the district court reasoned, Alliance's "lack of record keeping is not held against" Mr. Breaux. Pet. Appx. 1376, citing *Spillers v. La. PHS, L.L.C.*, No. 21-00762, 2022 WL

1675950, at *8 (W.D. La. May 10, 2022), R. & R. adopted, 2022 WL 1664120 (W.D. La. May 25, 2022).

The district court's inclination not to penalize the plaintiff for the defendant's failure to keep records is consistent with FLSA caselaw nationwide. In *Reich v. Southern New Engeland Telecom.*, 121 F.3d 58, 66-67 (2d Cir. 1997), the Second Circuit held that "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes, the solution is not to penalize the employee." That, the court reasoned, would "place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation." *Id.*, citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946).

But the district court did not need to rely on the absence of evidence because Alliance confirmed at argument that it maintained no records:

> THE COURT: The defendants, do they keep records that would allow us to see the amount of time that the plaintiff devoted to his different job duties?
>
> MS. POUCHER: Meaning Mr. Breaux?
>
> THE COURT: Yes, or any of the other workers.
>
> MS. POUCHER: No. Alliance does not keep, you know, crane logs. I think the best we have in terms of like a crane log would be when it was serviced, which isn't necessarily showing you when it's in use, and so too with the cooks and what they are doing. As far as I'm aware and

have asked for, we don't have record of what are the minute-to-minute
details. I think the best we have is sort of the receipts for the clients that
have engaged the services of the individual vessels, what their needs
are. I think that's the best we can do [. . .]

Pet. Appx. 1327, Tr. 20.

Next, Alliance argues to this Court that Mr. Breaux actually received overtime.

But in argument at the district court, Alliance admitted that there was no actual

overtime policy: that sometimes, at the captain's discretion, a cook who worked

fifteen hours in a day might get overtime for three hours, but would not get overtime

if he worked eighty-four hours in a week. Mr. Breaux outlined in his memorandum

that what Alliance called "overtime" was not FLSA overtime. Pet Appx. 126-28.

What Alliance labeled "overtime" in some circumstances and "extra pay" in others

was not consistently applied hitch-to-hitch, and Alliance did not produce any piece

of paper showing what Alliance's policy was, or how it was applied. Understandably,

the district court had questions:

THE COURT: So I don't understand from hitch to hitch how that would
change. One hitch you would say, yes, they get overtime and the next
one they didn't? I don't understand that.

MS. POUCHER: I can't say that it is also a picture of clarity to me
either. As I understand it, if they did extra work, if they had a difficult
amount of hours to work, they worked more than they were scheduled
to or what have you, that they typically only had to cook from this time
to this time, but today there were more people to feed or whatever the
case may be, that they did get overtime for that portion of the work they
performed.

THE COURT: If you worked over 40 hours, if a cook worked –

14

MS. POUCHER: No, I do not believe it was tied to 40 hours. No, Your Honor.

THE COURT: So I don't understand. What was it tied to?

MS. POUCHER: The scheduled work for that day.

THE COURT: And so what about the scheduled work for that day would entitle somebody to overtime?

MS. POUCHER: If the captain observed or the person reported that they worked beyond the amount they were scheduled for that day.

Pet. App. 1320-21 Tr. 13-14. Continuing, the Court asked:

THE COURT: Does the vessel log reflect whether the captain approved overtime for that hitch?

MS. POUCHER: No.

THE COURT: Where is that recorded?

MS. POUCHER: I believe it was verbal. I have to be honest with you, Judge. I don't believe there is a written record of why he would receive overtime for this week but not the next other than the explanation I have is that it was -- not discretionary to the captain, but the captain would observe that the cook worked in excess of the specific amount of time.

THE COURT: He schedules them for 15 hours, but that's the schedule. So he says so you don't get overtime even though you are going to work 60 hours this week? I don't understand how what he puts on the schedule determines it unless he makes sure that the schedule every week equals 40 hours.

MS. POUCHER: I understand, Your Honor. I wish I had a better explanation as to why it's not tied to a 40-hour calculation. I don't believe it was.

THE COURT: This is really not helpful to your client, is it?

15

MS. POUCHER: Not particularly, but I respect the Court and want to make sure I'm being as candid as possible.

THE COURT: I appreciate it.

Pet. Appx. 1324-25, Tr. 17-18.

Still, Alliance complains to this Court that Mr. Breaux did not carry his burden to show that crewmembers are similarly situated because, in Alliance's view, those other crewmembers are not subject to the same policy. Alliance tells this Court that "[f]ar from carrying his burden, Breaux simply alleges Alliance implemented a blanket policy of never paying its employees overtime, regardless of the nature of the employee's work." Pet. brief p. 20. In fact, Alliance admitted its policy:

THE COURT: Okay. So what if for the whole week or the whole hitch if they exceed 40 hours?

MS. POUCHER: Right. Yes, Your Honor. I believe that for crane operators they would just maintain their day rate for their hitch.

THE COURT: Say if they worked more than 40 hours, they worked 12 hours a day for five days so they are over 40 hours, would they get overtime?

MS. POUCHER: I believe the answer is no, Judge.

THE COURT: Why not?

MS. POUCHER: Because they were paid a day rate. Oh, you are asking what the exemption that they are –

THE COURT: Yes.

MS. POUCHER: A seaman exemption, Your Honor.

16

THE COURT: Under the FLSA?

MS. POUCHER: Yes, Your Honor.

Pet. Appx. 1321-22, Tr. 14-15.

The district court ruled that Alliance could not fail to maintain paperwork, then blame Mr. Breaux for not presenting that same paperwork. Alliance cannot tell the district court that Alliance applied the seaman exception to all its crewmembers, then tell this Court that Mr. Breaux's claim that Alliance applied the seaman exception to all its crewmembers is nothing but a naked allegation. In light of these admissions, the case law, and the records provided, the district court correctly – inescapably – ruled that Alliance believed all its employees were under the FLSA's seaman exception. All Alliance liftboat employees were under the same misguided policy. They were all similarly situated.

In asking this Court to rule that the district court so widely missed the mark that mandamus is warranted, Alliance cites no cases from this Court, or any other, in support of its position that only those employees who are granularly identical (same job, same boat, same rules) are similarly situated. The closest Alliance comes is *Clarke v. Pei Wei Asian Dinner LLC*, No. 20-800, 2023 WL 2518805 (N.D. Tex. Mar. 13, 2023), where the plaintiffs argued they were classified as exempt improperly, but for different reasons. There was one named plaintiff, and sixteen opt-in plaintiffs, and they worked in nine different states. Pei Wei argued for the FLSA's

17

executive and administrative exemption, as well as arbitration and a statute-of-limitations defense. The district court decertified, finding there would be seventeen different mini-trials. It did so within its broad discretion. *Pei Wei* does not set a new standard for "similarly situated" The district court there cites the same nonexclusive three-factor test as all the other courts cited here, and it is a district court opinion soundly within the district court's discretion.

f. *Adams* does not set the standard for "similarly situated."

Instead, Alliance argues suggests to this Court that the proper standard is that "the *Swales'* similarly situated analysis, of course, is also determined by the *Adams'* inquiry of what work the other employees actually did." Pet. brief p. 28. *Adams* did not address the standard for "similarly situated," and did not purport to.

In *Adams*, the parties agreed to a collective action, before *Swales*, of cooks and crane operators. All Coast (the employer) argued that all the work contributed to the navigational function of the vessel, and this Court disagreed. The district court had held that everyone was a seaman for FLSA purposes. Reversing the district court's grant of summary judgment in favor of All Coast, this Court held that work on the cranes and work cooking for third-party hands is not FLSA-exempt. But it reached that holding *because* that work "had nothing to do with the operation of liftboats" and there was "no evidence in the record from which [the Court] could conclude that those activities aided the liftboats at all as a means of transportation."

*Adams*, 15 F.4th at 375. The standard laid out in *Adams* is that only those activities that aid the vessel as a means for transportation are FLSA-exempt. This is the same standard as in *Walling*. But what *Adams* does not do, and does not purport to do, is to redefine the standard for similarly situated. Instead, *Adams* recognizes that the seaman exception will have some fact-specific parts to it, just like the executive exemption, and, presumably, all other FLSA exemptions.[6] That is just another way of saying that this is an ordinary FLSA case, and there may be some some granular factual determinations.

Further, *Adams* explains that the district court cannot determine whether cooks are FLSA-exempt without also analyzing whether all the other crewmembers are FLSA-exempt. The *Adams* court addressed cooks and crane operators together, and it observed that the analysis as to cooks is particularly complicated. A cook is a seaman when he cooks for seamen. When he spends 20% of his time cooking for non-seamen, he is not a seaman. *Adams*, 15 F.4th at 376, citing *Martin v. Bedell*, 955 F.2d 1029 (5th Cir. 1992) (Wisdom, J.) However, the analysis is not as simple as adding up the number of crewmembers and the number of third-party hands. When the liftboat is jacked up, the cook could cook for *only* crewmembers, and if those crewmembers are not contributing to the vessel as a means of transportation, then

---

[6] Alliance has separately argued *Adams* has been overruled, so Alliance's reliance on *Adams* here is flummoxing. See generally Exhibit 2.

the cooks would still be owed overtime. *Id.* at 376. Therefore, determining whether the cooks are owed overtime *requires* determining whether the other crewmembers are entitled to overtime. If this case proceeds on the basis Alliance has suggested, looking only at cooks, the district court would still be required to determine whether the other crewmembers are FLSA-exempt. Therefore, the common factual questions here weigh particularly in favor of a broader class.

In sum, the district court faced employees with different jobs, but they were subject to the same policy. This is the same as in *Loy*, as in *Adams*, and countless other district court and appellate opinions in this Circuit and beyond. The district court authorized discovery, listened to the evidence, and considered the facts and the argument. The district court ruled in Mr. Breaux's favor, within its discretion and consistent with the above case law.

**2. None of this gets close to the standard for mandamus.**

Presumably because of the insurmountable burden on a petition for a writ of mandamus, Alliance tried other appellate avenues twice before filing this petition. The above shows why the district court was right, and its ruling is consistent with case law in this Circuit and beyond. However, even if the district court were arguably wrong, it is still a matter of discretion, and for mandamus, there must be an egregious abuse of discretion; an error of law is not enough.

One would think that Alliance could point to such an egregious abuse. To the contrary, Alliance has claimed previously that there are substantial grounds for difference of opinion. When asking the district court for interlocutory appeal, Alliance noted "given the divergence in the jurisprudence considering the treatment of the legal standard employed at the outset of FLSA collective action cases, the second requirement is met through the demonstration of substantial ground for disagreement concerning the correct legal standard." Pet. Appx. 1392. Having admitted to a great divergence in the jurisprudence, it sits ill for Alliance tell this Court that the district court clearly and indisputably erred.

Furthermore, if Alliance believes the district court egregiously erred, Alliance should be able to tell this Court what the district court should have done instead. To the district court, Alliance argued that certification was improper, but if it were proper, it should only be cooks on one liftboat. To this Court, Alliance claims that "crewmembers on liftboats" is too broad, but does not argue that some narrower collective action should have prevailed.

Alliance tells this Court that the district court inescapably erred in granting a collective action. But Alliance does point to any case law, from this Circuit or elsewhere, suggesting that the district court made legal error, or applied the wrong standard. At best, Alliance argues that the district court underweighed one of the three FLSA collective-action certification questions (the factual circumstances of the

plaintiffs), and presumably overweighed the second and third (the factual defenses available, and fairness considerations). This is not the stuff of mandamus.

### 3. Alliance cannot show irreparable harm.

Alliance points to no precedent from this Court, and Mr. Breaux can find no precedent, granting mandamus under similar circumstances. In the FLSA context, mandamus has been granted *before* notices leave, but – to Mr. Breaux's research – never after.

*Richards v. Eli Lilly & Co.*, 149 F.4th 901 (7th Cir. 2025) was an interlocutory appeal after district court certification under 28 U.S.C. § 1292(b), as was *Swales,* and as was *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 520 (2d Cir. 2020). That makes sense: they were cases where this Circuit, and the Seventh, and the Second, issued a new rule. But in none of these cases did anyone suggest the appropriate remedy was mandamus.

*Loy v. Rehab Synergies, LLC*, 71 F.4th 329 (5th Cir. 2023) was an ordinary appeal, after the district court allowed the matter to proceed as a collective action. Rehab Synergies was able to appeal the issue under ordinary, not extraordinary, process. So too *Monroe v. FTS USA, LLC*, 860 F.3d 389 (6th Cir. 2017): FTS lost the case and appealed it. In *O'Brien v. Ed Donnely Enter's, Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), the plaintiffs lost on summary judgment and appealed. In *Halle v. W. Penn Allegheny Health Sys. Inc.,* 842 F.3d 215, 226 (3d Cir. 2016), the district court

decertified, and the appellants – three opt-in plaintiffs – were dismissed without prejudice. They had no right to appeal because they lost no substantive or procedural rights. The Court said  that "it may seem unfair to require the opt-in plaintiffs either to litigate a case to conclusion or certify an interlocutory appeal, finality — not unsupported assertions about fairness — defines our court's jurisdiction." *Id.* at 227.

Therefore Alliance's argument that the issue "is truly irremediable on ordinary appeal"[7] is plainly wrong. That holding is also compelled by *In re JPMorgan Chase & Co.*, 916 F.3d 494 (5th Cir. 2019), where this Court held that orders facilitating notice to potential opt-in plaintiffs could meet the mandamus requirements, but it so held because the issue would be moot after notice is sent. Once the notices were sent, there was no going back. Chase cleared the high mandamus bar with regard to timeliness: this Court held that "Chase has shown that the issue presented is irremediable on ordinary appeal." The appropriate time for mandamus, procedurally, is either before the notices have been sent (as in *JP Morgan*), or not at all (as in every other case on the issue). Even in *In re Depuy Orthopaedics, Inc.*, 870 F.3d 345 (5th Cir. 2017), where there were 9,300 plaintiffs in multidistrict litigation and the district court patently, gravely erred, this Court denied the petition because Depuy Orthopaedics had an ordinary right to appeal. "[F]or appeal to be an inadequate remedy, there must be some obstacle to relief beyond litigation costs that renders

---

[7] Brief at 26, citing *In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 352–53 (5th Cir. 2017).

obtaining relief not just expensive but effectively unobtainable." *Id.* at 353 (cleaned up). This Court specifically held that hardship, like substantial settlement pressure, is not grounds for mandamus. *Id.* So too, *In re DeSoto County, Mississippi*, No. 26-60020 (5th Cir. Jan. 20, 2026), where the district court denied a stay of trial on a case that may become moot. This Court denied mandamus, finding that the district court is well within its authority to control its own docket, and as for prejudice, "the costs of trial are not extraordinary—rather, they are a basic incident of litigation."

That is what Alliance faces here: a lawsuit, the costs of trial, and, at the end of trial, the costs of not having paid its crewmembers the overtime they are owed. Alliance does not approach the standard for mandamus.

## 4. Conclusion

For the foregoing reasons, Alliance's petition for a writ of mandamus should be denied.

Respectfully Submitted,

/s/Harry Morse
Harry E. Morse
Martin S. Bohman
**BOHMAN MORSE, LLC**
400 Poydras St., Suite 2050
New Orleans, LA 70130
Attorneys for plaintiff-respondents

## CERTIFICATE OF SERVICE

Plaintiff-respondents certify that a copy of the foregoing was filed on 3rd day of March, 2026, with the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system, which will send a notice of electronic filing to all participating counsel of record.

/s/Harry Morse

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed R. App. P. 21(d) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), it contains 5,874 words.


2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Word version 2601, in Times New Roman 14-point font.


Dated: March 3, 2026

/s/Harry Morse