NO. 26-30091

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

## *IN RE* ALLIANCE LIFTBOATS, LLC
_____


## PETITION FOR WRIT OF MANDAMUS FROM THE UNITED STATES
## DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA,
## HON. SUSIE MORGAN, CIVIL ACTION 2:24-CV-01000

_____

## REPLY BRIEF IN FURTHER SUPPORT OF
## PETITION FOR WRIT OF MANDAMUS

_____

David M. Korn (Bar #21676)
Rebecca Sha (Bar #35317)
Stephanie M. Poucher (Bar #37263)
Brendan J. Besh (Bar #40280)
**PHELPS DUNBAR LLP**
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504 566 1311
Facsimile: 504 568 9130
Email:       kornd@phelps.com
             rebecca.sha@phelps.com
             stephanie.poucher@phelps.com
             brendan.besh@phelps.com

**ATTORNEYS FOR DEFENDANT-
PETITIONER, ALLIANCE LIFTBOATS,
LLC**

## CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that, pursuant to 5TH CIR. R. 28.2.1, the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Patrick Breaux, plaintiff-respondent

2. Murray Dorsey, Plaintiff-respondent

3. Matthew Sims, Plaintiff-respondent

4. Bobby Bergeron, Plaintiff-respondent

5. Regan Bourque, Plaintiff-respondent

6. Paul Brady, Plaintiff-respondent

7. Phillip Coles, Plaintiff-respondent

8. Marcus Jeansonne, Plaintiff-respondent

9. Leonard Jonson, Plaintiff-respondent

10. Kharon Marion, Plaintiff-respondent

11. Jakobee Matthews, Plaintiff-respondent

12. Renwick McPherson, Plaintiff-respondent

13. Dorian Morgan, Plaintiff-respondent

14. Xavier Pitts, Plaintiff-respondent

15. Jeffrey Powell, Plaintiff-respondent

PD.60957573.7

16.    Dustin Sellers, Plaintiff-respondent

17.    Robert Staples, Plaintiff-respondent

18.    Howard Wilson, Plaintiff-respondent

19.    Benjamin Wright, Plaintiff-respondent

20.    James Stevenson, Plaintiff-respondent

21.    Francisco Coates, Plaintiff-respondent

22.    Jeremy Towner, Plaintiff-respondent

23.    Orlando Davis, Plaintiff-respondent

24.    Stanley Harris, Plaintiff-respondent

25.    Jakhiri Rogers, Plaintiff-respondent

26.    Vasily Tsys, Plaintiff-respondent

27.    Irving Guerrero, Plaintiff-respondent

28.    Trent Allen, Plaintiff-respondent

29.    Counsel for plaintiff-appellee:

Harry E. Morse
Martin S. Bohman
**BOHMAN MORSE, LLC**
400 Poydras St., Suite 2050
New Orleans, LA 70130

Cayce C. Peterson
Jeffrey P. Green
**JJC LAW LLC**
111 Veterans Memorial Blvd.
Heritage Plaza, Suite 810
Metairie, LA 70005

Michael A. Mahone, Jr.
**THE MAHONE FIRM LLC**
5190 Canal Blvd, Suite 102
New Orleans, LA 70124

Thomas M. Flanagan
Anders F. Holmgren
**FLANAGAN PARTNERS LLP**
201 St. Charles Ave., Ste. 3300
New Orleans, LA 70170

30.   Alliance Liftboats, LLC, defendant-petitioner

31.   Helix Energy Solutions Group, Inc.

32.   Counsel for defendant-petitioner:

David M. Korn
Rebecca Sha
Stephanie M. Poucher
Brendan J. Besh
**PHELPS DUNBAR LLP**
365 Canal St., Suite 2000
New Orleans, LA 70130

SO CERTIFIED, this the 6th day of March, 2026.

*/s/Rebecca Sha*
Rebecca Sha

PD.60957573.7

# TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PARTIES** ...................................................ii

**TABLE OF AUTHORITIES** ............................................................................vi

**INTRODUCTION** ..............................................................................................1

**ARGUMENT** .....................................................................................................3

      **A.**     Breaux Misstates the Factual Record and the
           Evidentiary Burden of Certifying a Collective Action..............3

      **B.**     *Adams* Sets the Standard for How the Seaman
           Exemption Interplays with the FLSA's Collective
           Action Requirements, Which Includes the Similarly
           Situated Analysis.......................................................................9

      **C.**     The Extraordinary Relief of Mandamus Is Required
           Here to Right the Extraordinary Wrong in Certifying
           this Collective Action................................................................13

**CONCLUSION**...................................................................................................16

**CERTIFICATE OF SERVICE** ........................................................................18

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS AND TYPE
STYLE REQUIREMENTS**..................................................................................19

PD.60957573.7

# TABLE OF AUTHORITIES

## Cases

*Adams v. All Coast, L.L.C.*
  15 F.4th 365 (5th Cir. 2021) ...................................................... *passim*

*Coffin v. Blessey Marine Servs., Inc.*
  771 F.3d 276 (5th Cir. 2014) ......................................................9, 10

*Hamm v. Acadia Healthcare Co., Inc.*
  748 F. Supp. 3d 404 (E.D. La. 2024)................................................14

*Hoffmann-La Roche Inc. v. Sperling*
  493 U.S. 165 (1989)........................................................................15

*In re Briscoe*
  448 F.3d 201 (3d Cir. 2006) ...........................................................13

*In re Sch. Asbestos Litig.*
  977 F.2d 764 (3d Cir. 1992) ...........................................................13

*Loy v. Rehab Synergies, L.L.C.*
  71 F.4th 329 (5th Cir. 2023) ...................................... 3, 10, 11, 12

*Reich v. S. New England Telecommunications Corp.*
  121 F.3d 58 (2d Cir. 1997*)* ............................................................3

*Stringer v. Big Texan Steak Ranch, Inc.*
  No. 23-181, 2025 WL 642050 (N.D. Tex. Feb. 27, 2025) ...................3

*Swales v. KLLM Transp. Servs., L.L.C.*
  985 F.3d 430 (5th Cir. 2021) ...................................................... *passim*

## Statutes and Other Authorities

29 C.F.R. § 783.33 ........................................................................10

29 U.S.C. § 207 ...............................................................................9

PD.60957573.7

## REPLY BRIEF IN FURTHER SUPPORT OF
## PETITION FOR WRIT OF MANDAMUS

**MAY IT PLEASE THE COURT:**

Defendant-Petitioner Alliance Liftboats, LLC ("Alliance"), submits this Reply Brief in further support of its Petition for Writ of Mandamus, seeking an order rescinding the district court's October 6, 2025 Order and Reasons, which granted Plaintiff Patrick Breaux's Motion to Certify a Collective Action (the "Collective Action Order" or "Order").

## INTRODUCTION

*Swales* requires district courts to "rigorously scrutinize the realm of 'similarly situated' workers," and mandates that they "do so from the outset of the case."[1] Yet, in his entire twenty-four-page brief, Breaux fails to identify any evidence demonstrating that he and those he seeks to represent are similarly situated. Instead, Breaux points exclusively to vessel logs from the L/B MIAMI, documents that reveal nothing about what those aboard the vessel "actually do," and otherwise complains that Alliance somehow prevented him from bearing his burden of proof. Chief among his grievances is that Alliance does not keep records showing what its seagoing employees do each minute of their hitch—records Alliance is not statutorily obligated to maintain.

---

[1]    *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 434 (5th Cir. 2021).

- 1 -

Alliance's lawful record keeping, which is strictly regulated by the U.S. Coast Guard, hardly rendered Breaux incapable of demonstrating his proposed class is similarly situated to the work he performed as a cook on the L/B MIAMI. Breaux could have issued targeted interrogatories. He chose not to. He could have noticed depositions. But, again, he chose not to. He could have even submitted his own sworn statement, detailing what he and his fellow crewmembers did aboard the vessel. But Breaux declined this option too.

Despite this glaring dearth of evidence, the district court took the unprecedented step of certifying a class inclusive of *every single crew member* aboard *every single liftboat* in Alliance's vast fleet, without any reference to their respective job requirements or even what work the numerous liftboats were chartered by Alliance's various clients to do. Indeed, in Breaux's Opposition and the Collective Action Order, how a vessel's captain could possibly be similarly situated to its cook for purposes of the FLSA seaman exemption goes entirely unexplained and is left wholly unsupported. This extraordinary Order, which defies both *Swales* and *Adams*, demands an extraordinary remedy.[2] Mandamus is warranted under this case's unique set of circumstances.

---

[2]    *See id.*; *Adams v. All Coast, L.L.C.*, 15 F.4th 365 (5th Cir. 2021).

# ARGUMENT

### A.  Breaux Misstates the Factual Record and the Evidentiary Burden of Certifying a Collective Action.

It is well-established that "the plaintiff bears the burden of showing that potential collective-action members are similarly situated, using more than mere 'conclusory statements' and affidavits that are not 'substantial and detailed.'"[3] Yet, the district court certified a collective action comprised of Alliance's differently situated employees aboard different vessels without any evidence to support this finding.

By the district court's own admission, the court reviewed no evidence regarding the nature of the work performed by different Alliance employees, including captains, mates, ordinary seamen, able-bodied seamen, cooks, qualified members of the engine department, and engineers.[4] Instead, because Alliance did not keep logs which described, in full detail, what these employees did on an hourly basis, the district court held Alliance responsible for Breaux's failure to produce evidence of this kind. One stark issue with this ruling, however, is that Alliance had no statutory duty to maintain these kinds of logs, unlike those required under the FLSA which Alliance kept, reflecting the hours its employees worked.[5]

---

[3]  *Stringer v. Big Texan Steak Ranch, Inc.*, No. 23-181, 2025 WL 642050, at *2 (N.D. Tex. Feb. 27, 2025); *see also Loy v. Rehab Synergies, L.L.C.*, 71 F.4th 329, 336 (5th Cir. 2023).

[4]  *See* Order Granting Collective Action, E.D. La. ECF No. 38 (attached to the Petition).

[5]  Both Breaux and the district court rely on the Second Circuit's decision in *Reich v. S. New England Telecommunications Corp.*, 121 F.3d 58 (2d Cir. 1997) for the proposition that Breaux

The lack of hourly logs no employer is required to keep under the FLSA was far from the insurmountable obstacle to proving similarly situated status Breaux made it out to be. As the district court noted, Breaux chose not to explore the various other methods of discovery he had at his disposal, a decision the district court well exceeded its authority in excusing. Despite the district court's broadly reaching order granting pre-certification discovery, Breaux declined to notice any depositions, furnish interrogatories that directly requested key information on the work class members performed, or prepare specific declarations. Further still, when pressed at oral argument, Breaux admitted he did not move to compel any additional documentation or responses from Alliance because, in his view, he had what he needed to proceed with certification.[6]

---

should not be "punished" for Alliance's failure to keep records detailing what work he performed on an hourly basis—logs that neither the FLSA nor any other statute require. But the issue in *Reich* was that the employer did not keep mandatory employment records detailing the number of hours its employees worked. Critically, Alliance *does* keep those required employment logs reflecting the total number of hours worked by its employees and in fact included a selection of Breaux's pay documents as exhibits to its briefing before the district court. *See* Breaux Paystubs, attached as Exhibit 1 to Alliance's Opposition to Motion to Certify Collective Action, E.D. La. ECF No. 23-1 (showing hours worked on that particular work week). Further still, Breaux advised the Court that he would later request these timesheets after certification but at no point did he present them as evidence in support of similarly situated status. *See* Breaux's Response to Alliance's Supplemental Memorandum Regarding Mr. Breaux's Motion to Certify a Collective Action, E.D. La. ECF No. 35 (attached to Alliance's Petition), at p. 7. Thus, the district court and Breaux's reliance on *Reich* is simply misplaced. Alliance did not fail to keep statutorily mandated employment records. Alliance should not have been penalized for Breaux's failure to produce any evidence showing the work he performed simply because Alliance did not keep records it was not obligated to maintain.

[6]   *See* Transcript of August 20, 2025 Hearing, attached as an Exhibit to Petition for Writ of Mandamus, at p. 8, ll. 1–5 ("[W]e didn't get everything we asked for, but we think that we got enough to move forward with the collective action.").

The district court itself noted the clear lack of evidence sufficient to certify a collective action in oral argument. At first, the district court appeared amenable to the rigorous scrutiny *Swales* necessitates by recognizing that there needed to be sufficient evidence regarding a common policy and practice between these purportedly similar employees as well as whether they are FLSA exempt seamen. Finding a significant lack of evidence, the district court explained:

> THE COURT: In trying to think about what the common questions are that could be answered in a collective action, one would be is there a policy that applies to all these people, ***and the second would be whether they are non-FLSA seamen. The plaintiff provided very little evidence for me to work with in terms of whether that is seriously in dispute.*** I wonder what the plaintiffs' thought process is about the evidence that you could give me about that and whether one of your responses to that is, "Well, the defendants didn't produce the documents," you know, why you didn't pursue that[7] and ***why you didn't go to your own clients and other people that you could have contact with to give me more information about that.***[8]

Unable to provide such evidence or an explanation of why he failed to produce it, Breaux instead asserted only that he provided the district court with evidence showing the frequency with which the L/B MIAMI was in the jacked up position.[9]

---

[7]  Breaux likely did not move to compel documents showing what Alliance's individual employees did on the vessel at any given time because Alliance, while lodging objections typical of most discovery responses, agreed to search for such documents, including job descriptions, but ultimately advised that no such documents existed. Put differently, Breaux likely did not "pursue" these documents because he was correctly advised that they did not exist. Notably, Alliance did produce its employee handbooks and standard operating procedures along with thousands of pages of other responsive documents.

[8]  *See* Transcript of August 29, 2025 Hearing and Status Conference, attached as an Exhibit to Petition for Writ of Mandamus, at pp. 11–12, ll. 14–25, 1–2 (emphasis added).

[9]  *Id.* at p. 12, ll. 18–24.

- 5 -

But the Court did not find that this evidence was sufficient and instead responded: "Yes, I understand that. So I thought you might have wanted to give me some evidence, you know . . . *that's why I let you do discovery. I can consider evidence, and all you gave me was legal argument*."[10] There was a dearth of evidence in support of Breaux's burden of proof here, as the district court itself identified, that should have made certification impossible.

Indeed, Breaux even went so far as to admit in his briefing that, post-certification, he needed to take twelve "representative depositions" to "confirm" what work the individual class members actually performed and determine what the various vessels in the Alliance fleet did, where, and when.[11] Instead of holding Breaux to the very burden it identified during oral argument, the district court accepted Breaux's invitation to certify a collective class on the front end, only to hope that the evidence supporting certification would come later.

As a result, and despite this Court's clear instruction that the vessel's location is not a relevant consideration for FLSA seaman status, the district court granted certification based solely on the fact that Alliance's liftboats were, at times, in the jacked-up position. But as this Court stressed in *Adams*: "*If the crew had only*

---

[10] *Id*. at pp. 12–13, ll. 25, 1–3 (emphasis added).

[11] *See* Breaux's Response to Alliance's Supplemental Memorandum Regarding Mr. Breaux's Motion to Certify a Collective Action, E.D. La. ECF No. 35 (attached to Alliance's Petition), at p. 4.

*serviced the liftboats while they stood stationary next to the oil platforms, that would have been seamen's work without question*."[12] Thus, instead of evaluating what considerations would be relevant to determining who is and is not an FLSA seaman, a standard this Court established in *Adams*, the district court certified the collective action of simply everyone Alliance deemed an overtime exempt seaman, regardless of the job they held, what they did while the vessel was jacked, or which vessel they worked on.

Critically, Breaux's failure to submit evidence demonstrating what he and his fellow crewmembers did aboard any of Alliance's liftboats did not mean there was no evidence before the district court providing such details. As Alliance demonstrated, its liftboat employees worked, lived, ate, and slept aboard the liftboat and were subject to the direct supervision of the vessel's captain.[13] A cook's duties included plainly exempt seaman work; for example: (1) maintaining and cost controlling the galley inventory in consultation with the captain; (2) good housekeeping in all galley and mess areas; (3) managing and maintaining the safe operation of the galley and all galley appliances; and (4) assisting as needed during any shipboard emergency as necessary.[14]

---

[12]   *Adams*, 15 F.4th at 376.

[13]   Declaration of Jared Chiasson (Sept. 5, 2025), attached as Exhibit 1 to Alliance's Supplemental Opposition to Motion to Certify, E.D. La. ECF No. 34-1, at ¶ 5.

[14]   Alliance's Standard Operating Procedures, attached as Exhibit 2 to Alliance's Supplemental Opposition to Motion to Certify, E.D. La. ECF No. 34-2, at 46 (ALLIANCE_00494).

Similarly, when a liftboat is jacked up, Alliance employees, including crane operators, cooks, and all other members of the liftboat crew, retain responsibility for various mandatory tasks, including standing lookout, checking the engine room, attaching cables, splicing rope, cleaning, chipping and painting, steering and performing other duties critical for maintaining the safe operation of the vessel, its seaworthiness, and upkeep.[15] These are precisely the kinds of tasks this Court described as "traditional maritime duties related to navigation and upkeep" as explained in *Adams*, including "check[ing] the engine room, attach[ing] lifting devices to cables, splic[ing] rope, clean[ing] and paint[ing]."[16] That the vessel is not actively traveling while these activities are being performed is immaterial to the "quintessential" nature of these exempt duties.[17]

It is undisputed that Alliance liftboat crewmembers do not perform any work on the platform while the vessel is jacked and instead are required to remain on the liftboat performing traditional seaman duties.[18] The evidence was overwhelmingly stacked against Breaux for certifying the collective action, a consequence of Breaux's own litigation strategy. Breaux made the strategic decision to forego

---

[15] *See* Declaration of Jared Chiasson (Sept. 5, 2025), attached as Exhibit 1 to Alliance's Supplemental Opposition to Motion to Certify, E.D. La. ECF No. 34-1, at ¶ 7.

[16] *Adams*, 15 F.4th at 371 n.3 (5th Cir. 2021)

[17] *Id*. at 370.

[18] Declaration of Jared Chiasson (Sept. 5, 2025), attached as Exhibit 1 to Alliance's Supplemental Opposition to Motion to Certify, E.D. La. ECF No. 34-1, at ¶ 7.

noticing depositions, issuing interrogatories, or even simply preparing his own sworn statement, choosing instead to proceed to certification. The only record evidence demonstrated that Alliance employees were neither similarly situated nor misclassified as seaman.

Breaux's evidentiary submission fell ***woefully*** short of carrying his burden of proof. Having chosen to ignore this Court's plain instructions issued in *Swales* and *Adams* based simply on Alliance's decision not to keep records neither the FLSA nor any other statute requires them to keep, the district court far exceeded its authority in certifying this astoundingly broad collective class.

### B.    *Adams* Sets the Standard for How the Seaman Exemption Interplays with the FLSA's Collective Action Requirements, which Includes the Similarly Situated Analysis.

In discussing the complexities of seaman status in *Adams*, Breaux concedes Alliance's central point: the analysis of the seaman work performed by multiple different types of employees on a vessel is incredibly fact specific.[19] Here, where a sweeping collective action comprises deck hands, cooks, engineers, and captains, certifying a collective without ever considering the work performed by those comprising the collective is a grievous error. The employees who are exempt seamen

---

[19]  *See Adams*, 15 F.4th at 369 ("The FLSA's baseline requirement is that any employee who works 'longer than forty hours' in a workweek must be compensated 'at a rate not less than one and one-half times the regular rate at which he is employed. An employee is not protected by this broad prohibition, however, if he falls within an exemption.'" (citing 29 U.S.C. § 207(a)(1); *Coffin v. Blessey Marine Servs., Inc.*, 771 F.3d 276, 279 (5th Cir. 2014)).

are not similarly situated to those who are not exempt seamen—they would by definition perform different tasks on the vessel and would then not be subject to an allegedly illegal policy of deeming them overtime exempt. Therefore, certifying a class inclusive of every single employee working aboard any liftboat ignores this Court's clear dictates that the seaman exemption depends on "'the character of the work' the plaintiffs did, 'not on what it is called or the place where it is performed.'"[20]

While, as Alliance can readily admit, this Court in *Adams* was not considering the certification of a collective action, the standard for determining seaman status is undeniably paramount at the certification stage in a case in which the sole allegation is misclassification as an exempt seaman. The seaman status inquiry is factually linked with the inquiry into the disparate factual and employment setting of the individual plaintiffs as well as the various defenses available to the defendant which are individual to each plaintiff, a factual predicate this Court has continued to consider, even post-*Swales*.[21] These individual differences, including the differences at play in each position on the vessel and between each employee of that position, make collective action certification here impossible as a matter of law. This is

---

[20] *Id*. at 370 (quoting *Coffin*, 771 F.3d at 280 (quoting 29 C.F.R. § 783.33)).
[21] *Loy v. Rehab Synergies, L.L.C.*, 71 F.4th 329, 336 (5th Cir. 2023) (cleaned up).

especially true where, as here, no evidence of what work any employee actually does is present.

Contrary to Breaux's position, this Court's holding in *Loy* does not stand for the erroneous proposition that all a district court must do is locate an alleged policy common to all employees to certify a collective action.[22] This Court in *Loy* found that a number of different kinds of therapists and health care professionals were similarly situated since they, as hourly employees, were allegedly subject to an unwritten policy of requiring uncompensated, off-the-clock work.[23] Thus, under those set of facts, the question that united the employees in *Loy* was whether they worked hours they were not paid for. Here, Breaux argues he was entitled to an overtime rate as opposed to a straight rate of pay for work he was undisputedly compensated for. Breaux's FLSA seaman exempt status—and therefore the work he actually did on the vessel—is the dispositive question on this issue.

In *Loy*, the overarching policy of off-the-clock work captured those similarly situated because the same improper practice, if proven, would be unlawful as to each employee. What work the individual employee performed did not alter the fact that the FLSA requires employers to pay its employees for all work they perform—either

---

[22] *See* Opposition to Alliance Liftboat's Petition for Mandamus, at p. 3 ("Instead, the case law, including this Court's decision in *Loy v. Rehab Synergies, LLC*, 71 F.4th 338 (5th Cir. 2023), holds that employees who are subject to the same policy are similarly situated.").

[23] *Loy*, 71 F.4th at 338.

the employer in *Loy* required its employees to perform uncompensated work off-the-clock or it didn't.

Comparatively, Alliance's purported policy of not paying overtime rates here does not create a valid collective action class of every employee deemed to be an overtime exempt seaman. Unlike the issue in *Loy*, whether an individual employee is entitled to an overtime rate instead of a straight rate is directly tied to the work they perform. This is a difficult tangle of individual considerations, and painting with a broad brush in certifying a collective action was not proper under these circumstances even though a broad policy was, conversely, effective in *Loy*.

This failure to engage with this Court's reasoning in *Adams* is not simply a matter of discretion, as Breaux contends, but a question of law that is reviewed *de novo*. As explained in *Swales*, while the district court's application of the standard for certifying a collective action is reviewed for an abuse of discretion, "the legal standard that district courts should use when deciding whether to send notice in an FLSA collective action" is reviewed *de novo*. To only look for a common policy or plan without regard to what the employees actually do or what exemptions would apply individually was error as a matter of law. *Swales* requires a district court to identify what factual determinations are dispositive to the challenged policy and, in a case in which misclassification as an FLSA exempt seaman is the sole issue, *Adams*

- 12 -

provides the touchstone for conducting a proper *Swales* analysis. The district court's Order disregards both precedents to reach its erroneous ruling.

That employees aboard a sea-going vessel would be considered seaman is not extraordinary. But deciding that every seagoing employee's seaman status can be determined uniformly is. In failing to properly consider what Alliance's employees, who range from cooks to mates to captains, actually do while instead searching for a policy to lump these differently situated employees altogether was legal, reversible error that can only be cured by mandamus.

### C.    The Extraordinary Relief of Mandamus Is Required Here to Right the Extraordinary Wrong in Certifying this Collective Action.

Regardless of whether notice has issued, mandamus is appropriate here to right the extraordinary error committed by certifying a broad collective action of every type of Alliance's maritime employees, even in the absence of any evidence supporting certification. Breaux does not dispute that Alliance has exhausted all other options to seek review in this action. Mandamus is "a drastic remedy that a court should grant only in extraordinary circumstances,"[24] and "petitioners seeking extraordinary writs" have a "general duty . . . to show that alternative means of appeal are inadequate."[25] Consequently, "[w]here interlocutory appeal [under section 1292(b)] seems a practical but untried avenue, we will ordinarily deny a

---

[24]  *In re Briscoe*, 448 F.3d 201, 212 (3d Cir. 2006) (quotation marks omitted),
[25]  *In re Sch. Asbestos Litig.*, 977 F.2d 764, 774 (3d Cir. 1992).

PD.60957573.7

petition for mandamus."[26] Thus, Alliance should not be penalized, as Breaux

contends, for seeking permissive appellate avenues before filing this petition.

Moreover, the district court's certification truly is irremediable on ordinary

appeal. Proceeding as a collective action fundamentally transforms the type of action

brought against Alliance, especially where Alliance will have no ability to decertify

this action under the district court's ruling in *Hamm*. Again, *Hamm* prevents any

relief in this matter without mandamus, as there will be no way to decertify and

effectively no opportunity for Alliance to narrow this action to those employees who

were allegedly not paid overtime when working a non-exempt job and paid a day

rate.[27] Thus, even after notice issued, the harm to Alliance in this exceptionally broad

and erroneous ruling is not "moot" as Breaux argues. Indeed, simply because notice

has issued does not mean that those who have been notified must retain their

supposed similarly situated status, regardless of how this Court rules here.

The writ is also appropriate under the circumstances because the collective

action certification at issue has importance for every business in the Circuit. Under

the district court's holding, sweeping collective actions can be certified without

consideration of whether employees were similarly situated or performed FLSA

---

[26] *Id.*

[27] *See Hamm v. Acadia Healthcare Co., Inc.*, 748 F. Supp. 3d 404 (E.D. La. 2024) (Morgan, J.) ("[T]he Court finds once certified under the *Swales* framework, after an opportunity to conduct preliminary discovery and fully brief the issues, there is no justification for a motion to decertify and to allow such a motion would be a waste of judicial resources.").

PD.60957573.7

exempt work. The practical importance is beyond question for those businesses, especially in the maritime sector, but is also demonstrated in the legal importance of this contentious area of law, where the federal circuits have splintered in how to conduct the similarly situated analysis.

Notwithstanding the industry-wide danger, the writ is also appropriate to remedy the abuse discussed in *Swales* itself regarding the use of collective actions to solicit claims. As this Court explained in *Swales*, "[i]n overseeing the process, the district court 'must be scrupulous to respect judicial neutrality. To that end, district courts must take care to avoid even the appearance of judicial endorsement of the merits of the action.' No judicial thumbs (or anvils) on the scale."[28] When the district court ruled in favor of certification while simultaneously decrying the lack of evidence in support of such certification, it placed an anvil on the scales against Alliance. Clarification of this recurring issue is necessary, and mandamus is appropriate under the circumstances, especially given the dangers of abuse present in the district court's judicial endorsement of the claims against Alliance.

Finally, based on the overall error in disregarding the legal standards at issue and any analysis of what these employees actually did, Alliance has demonstrated a clear and indisputable right to the writ. This Court's precedents, as explained above

---

[28] *Swales*, 985 F.3d at 436 (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989)).

and in the Petition, have demonstrated the district court's clear usurpation of judicial power in forgiving the plaintiffs' failure to provide any evidence to support certification. But this Court can remedy this enormous wrong with this rare relief, especially where it can prevent further harm and provide clarity in this area of labor law that will continue to appear before this Court.

## CONCLUSION

At the onset of this litigation, the district court had to balance the fact that Alliance's employees all performed individually tailored tasks that all could fall under the FLSA's seaman exemption. Rather than rigorously scrutinizing the evidence considering these factual and legal differences, the district court, erroneously, found a way around this analysis and instead opted to find a "policy" that lumped all these employees, including those who are plainly exempt, together. This was unmistakable error under *Swales* and fails to consider employees' actual tasks as mandated in *Adams*.

Even after identifying that, at best, "all [Breaux] gave [the district court] was legal argument,"[29] the district court nevertheless certified an astoundingly broad class of every single one of Alliance's liftboat employees.  Under these extraordinary circumstances and pursuant to this Court's precedent, Alliance is entitled to

---

[29] Transcript of August 29, 2025 Hearing and Status Conference, attached as an Exhibit to Petition for Writ of Mandamus, at pp. 12–13, ll. 25, 1–3 (emphasis added).

- 16 -

Mandamus. Absent intervention by this Court, there will be no opportunity to properly determine whether these employees—who by their very job descriptions are dissimilar—are in fact similarly situated with Breaux. Thus, this Court should grant this petition for writ of mandamus, directing the district court to rescind the above notice and issue an order denying collective certification in light of the record before it.

Respectfully submitted,

**PHELPS DUNBAR LLP**

By:   */s/Rebecca Sha*
      David M. Korn (Bar #21676)
      Rebecca Sha (Bar #35317)
      Stephanie M. Poucher (Bar #37263)
      Brendan J. Besh (Bar #40280)
      **PHELPS DUNBAR LLP**
      Canal Place | 365 Canal Street, Suite 2000
      New Orleans, Louisiana 70130
      Telephone: 504 566 1311
      Facsimile: 504 568 9130
      Email:      kornd@phelps.com
                  rebecca.sha@phelps.com
                  stephanie.poucher@phelps.com
                  brendan.besh@phelps.com

      **ATTORNEYS FOR DEFENDANT-PETITIONER, ALLIANCE LIFTBOATS, LLC**

- 17 -

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was filed on this 6th day of March, 2026, with the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system, which will send a notice of electronic filing to all participating counsel of record at the following email addresses:

Harry E. Morse, harry@bohmanmorse.com
Martin S. Bohman, martin@bohmanmorse.com
**BOHMAN MORSE, LLC**

Cayce C. Peterson, cayce@jjclaw.com
Jeffrey P. Green, jeff@jjclaw.com
**JJC LAW LLC**

Michael A. Mahone, Jr., mike@mahonefirm.com
**THE MAHONE FIRM LLC**

Thomas M. Flanagan, tflanagan@flanaganpartners.com
Anders F. Holmgren, aholmgren@flanaganpartners.com
**FLANAGAN PARTNERS LLP**


*/s/Rebecca Sha*
Rebecca Sha

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Fed R. App. P. 21(d) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), it contains 4,226 words.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally-spaced typeface, including serifs, using Word, in Times New Roman 14-point font, except for the footnotes, which are in proportionally-spaced typeface, including serifs, using Word in Times New Roman 12-point font.

*/s/Rebecca Sha*
Rebecca Sha

Dated: March 6, 2026

- 19 -